IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| MAUREEN RATTRAY, LISA LAMBERT, and LORI MATHES<br><br>Plaintiffs,<br><br>v.<br><br>WOODBURY COUNTY, IOWA, GLENN J. PARRETT, individually and as Sheriff of Woodbury County, and ROBERT E. ASPLEAF, individually and as Assistant Chief / Deputy Sheriff of Woodbury County<br><br>Defendants. | No. C07-4014 MWB<br><br>(No. C08-4008-MWB)<br>(No. C08-4032-MWB)<br><br>**PLAINTIFFS' AMENDED AND CONSOLIDATED CLASS ACTION COMPLAINT AND JURY DEMAND** |

COME NOW PLAINTIFFS Maureen Rattray, Lisa Lambert and Lori Mathes, individually and on behalf of a class of similarly situated persons, and for their Amended and Consolidated Class Action Complaint against Defendants Woodbury County, Iowa, Glenn Parrett and Robert Aspleaf, state:

## INTRODUCTION

1. This is an action brought to redress the depravation – under color of policy, regulation, official decision, custom, or usage – of a right secured to Plaintiffs by 42 U.S.C. § 1983 arising under the Fourth Amendment, incorporated to the states through the Fourteenth Amendment to the United States Constitution.

2. The plaintiffs seek to represent a class of all persons arrested on a serious misdemeanor charge and strip searched pursuant to defendant County jail's across-the-board strip search policy from February 13, 2005 until October 15, 2007 at 3:00 p.m.

3. "Strip search" is used in this Complaint to refer to the visual inspection by a law enforcement officer or officers of a person's bare breasts, buttocks, or genitals.

4. On information and belief, from at least 1980 and until October 15, 2007, at 3:00 p.m., defendant Woodbury County, through its Sheriff's Department, had an across-the-board policy of strip searching all individuals arrested and booked into the Woodbury County jail on a serious misdemeanor charge without regard to whether reasonable suspicion existed to perform such a strip search.

5. On information and belief, from February 13, 2005 until October 15, 2007, approximately 1750 individuals were arrested on a serious misdemeanor charge and subjected to the Woodbury County jail's unlawful blanket strip search policy.

## JURISDICTION

6. The civil action brought on behalf of the proposed class is brought pursuant to Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b), as well as to redress the deprivation—under color of policy, regulation, official decision, custom, or usage—of a right secured to the potential class by 42 U.S.C. §1983 arising under the Fourth Amendment, incorporated to the states through the Fourteenth Amendment, to the United States Constitution.

7. Jurisdiction is conferred to this Court through 28 U.S.C. §§1331 and 1343.

8. The unlawful acts alleged herein occurred at the Woodbury County Jail in Sioux City Iowa, Woodbury County.

9. Venue is appropriate in this district under 28 U.S.C. § 1391(b).

## PARTIES

10. Plaintiff Maureen Rattray, is a citizen and resident of the State of Nebraska and was at all times material hereto a resident of South Sioux City, Nebraska.

11. Plaintiff Lisa Lambert, is a citizen and resident of the State of Missouri and was at all times material hereto a resident of Sedalia, Missouri.

12. Plaintiff Lori Mathes, is a citizen and resident of the State of Iowa and was at all times material hereto a resident of Onawa, Iowa.

13. Plaintiffs bring this action individually and also seek to bring this action on behalf of a class of similarly situated persons.

14. The class for which Plaintiffs seek certification is as follows: All persons arrested on a serious misdemeanor charge and a strip search pursuant to Defendant jails across-the-board strip search policy from February 13, 2005 until October 15, 2007 at 3:00 p.m.

15. Defendant Woodbury County, Iowa, is a municipality duly incorporated under the laws of the State of Iowa.

16. Defendant Glenn Parrett is a citizen and resident of the state of Iowa and a resident of Sioux City, Iowa and employed as the Sheriff of Woodbury County.

17. Defendant Robert Aspleaf is a citizen and resident of the state of Iowa and a resident of Sioux City, Iowa and employed as the Assistant Chief / Deputy Sheriff of Woodbury County.

**GENERAL FACTUAL BACKGROUND AS TO PLAINTIFF RATTRAY**

18. On August 19, 2006, Sioux City Police Department officers arrested plaintiff at approximately 2:05 a.m. for Operating While Intoxicated, a violation of Iowa Criminal Code § 321J.2.

19. Violation of Iowa Criminal Code § 321J.2—first offense—is a serious misdemeanor.

20. After her arrest, Sioux City Police Department officers took Rattray to the Woodbury County Jail to be booked.

3
Case 5:07-cv-04014-MWB   Document 66   Filed 08/18/08   Page 3 of 20

21. Woodbury County Sherriff's deputies booked Rattray at approximately 3:10 a.m. on August 19, 2006.

22. Woodbury County Sherriff's deputies inventoried Rattray's property at or about 3:20 a.m. on August 19, 2006.

23. After completing the initial phase of the booking procedure, Woodbury County Sherriff's deputies placed Rattray in an adjacent room and "Female Jailer #1" instructed her to remove her clothes for a strip search.

24. Before removing her clothes, Rattray asked Female Jailer #1 if she would shut the door because plaintiff did not want the men outside of the door to see her naked.

25. Female Jailer #1 refused Rattray's request to shut the door.

26. As Rattray removed her pants, she began to cry.

27. A second woman, "Female Jailer #2" entered the room and mocked Rattray for crying.

28. While still mocking her, Female Jailer #2 ripped Rattray's halter top off of her body.

29. Next, Rattray told both Female Jailers #1 and #2 that she was on her menstrual cycle and was accordingly wearing a tampon.

30. One of the female jailers instructed Rattray to remove the tampon and in response Rattray asked if she could first put on a jail suit and then remove the tampon.

31. Female Jailers #1 and #2 refused Rattray's request to put on a jail suit before removing her tampon.

32. Rattray then realized that she was not wearing a tampon.

4

33. When Rattray informed Female Jailers #1 and #2 that she was not wearing a tampon, Female Jailer #2 shoved Rattray up against the wall and performed a cavity search of Rattray's vagina.

34. After performing that cavity search of Rattray's vagina, Female Jailer #2 stated, "There's nothing."

35. As part of the strip search, Female Jailers #1 and #2 then handed Rattray a jail suit and led her to her cell without allowing her to put on the jail suit as they paraded Rattray to her cell, which was the cell farthest down the hallway.

36. Because the jailers did not allow her to put on her jail suit before going to her cell, plaintiff's only option was to clutch the orange jumpsuit to her front side in an attempt to cover her breasts and genitals, leaving plaintiff unable to shield her entirely nude backside and buttocks.

37. As she walked down the cell halls, Rattray noticed a few men watching her.

38. Female Jailer #2 placed Rattray in the last cell at the end of a hallway.

39. Pursuant to the strip search policy, upon entering the cell, Female Jailer #2 placed Rattray face down on the bed and held her down by putting her knee in the plaintiff's back.

40. As Rattray screamed and cried, Female Jailer #2 performed a second cavity search of the plaintiff's vagina and genital area as part of the policy.

41. No weapons or contraband were found.

42. Following the second cavity search, Rattray put on her jail suit and remained in her cell until released.

43. Rattray was traumatized by the strip and cavity searches perpetrated on her pursuant to defendant's policy on August 19, 2006 at the Woodbury County Jail.

## GENERAL FACTUAL BACKGROUND AS TO PLAINTIFF LAMBERT

44. On March 17, 2007, at approximately 2:00 p.m., plaintiff Lisa Lambert met her now ex-husband in Sioux City, Iowa to retrieve a personal belonging.

45. During the meeting, Lambert's ex-husband called her a "fucking cunt." In response, the plaintiff slapped him in the face.

46. As Ms. Lambert left the residence, her ex-husband told her that he was going to call the police.

47. Lambert had to pick up their eight-year-old son at 4:00 p.m. that day, and was concerned about leaving town to go back to South Dakota if her husband had in fact called the police.

48. To be certain, Lambert called the Sioux City Police Department, informed the dispatcher of the altercation, and asked whether her ex-husband had already called the police.

49. The dispatcher asked that Lambert come to the Sioux City police station to "tell her version of the story." Lambert complied with that request.

50. When Lambert arrived at the Sioux City Police Station, a Sioux City police officer asked her what happened.

51. Lambert told the Sioux City police officer about her ex-husband's derogatory remark and her responsive slap.

52. When Lambert finished with her story, the officer said, "I'm sorry but I have to arrest you."

53. The Sioux City police officer arrested Lambert at the Sioux City police station and charged her with simple assault under Iowa Code § 708.2A and released her to the Woodbury County jail.

54. Sheriff's department personnel employed by defendant Woodbury County arrested and rebooked Ms. Lambert under a charge of "Assault-Ser Domestic."

55. When she arrived at the Woodbury County Jail, Ms. Lambert turned in her jewelry, purse, and other personal belongings at the booking window.

56. Next, a female jailer fingerprinted Lambert in a separate room down the hall from the booking lobby.

57. After fingerprinting Lambert, the female jailer led the plaintiff back into the booking lobby and into a small room adjacent to the booking lobby. The room had small glass windows.

58. Once in the small room with small glass windows, the female jailer informed Lambert that she had to remove all of her clothing for a strip search.

59. Because Lambert had never before been arrested and did not expect to be strip searched, the plaintiff became upset and began to cry.

60. The female jailer told Lambert that the strip search was pursuant to the jail's policy and something that had to be done as part of a routine.

61. Lambert removed her clothing, as instructed while the female jailer stood against the door.

62. The female jailer next instructed Lambert to lift her breasts, and Lambert complied.

63. Finally, the female jailer instructed Lambert to face the wall and bend over, exposing her buttocks. Lambert again complied. The female jailer then ordered Lambert to spread her buttocks and cough, with which Lambert again complied.

64. No weapons or contraband were found.

65. After the female jailer completed the strip search, Lambert put her street clothes back on except for her shoes and was transferred to a cell where she stayed overnight.

66. Lambert was released from the Woodbury County Jail on the morning of March 18, 2007, between 9:00 and 10:00 a.m.

67. The Domestic Abuse Assault charge for which Lambert was arrested and detained was later reduced to Disorderly Conduct-Non Domestic, and then ultimately dismissed by a Woodbury County Judge on May 21, 2007.

68. Lambert was traumatized by the strip search perpetrated on her pursuant to defendant's policy on March 17, 2007 at the Woodbury County jail.

**GENERAL FACTUAL BACKGROUND AS TO PLAINTIFF MATHES**

69. On May 7, 2007, Lori Mathes was arrested by the Iowa State Highway Patrol for possession of marijuana, a serious misdemeanor

70. Mathes did not possess marijuana and contests the charge.

71. Mathes was booked into the Woodbury County Jail following her arrest for a serious misdemeanor on May 7, 2007.

72. Upon entering the booking area of the Woodbury County Jail, Mathes noticed that the east wall of the booking area at the Woodbury County Jail had three rooms, each with a window.

73. After Mathes finished at the booking window, a female jailer led her into one of the rooms on the east wall of the booking area and instructed her to remove all of her clothing for a strip search.

74. Mathes noticed that the door of the room was ajar and that several men outside of the room sitting in the booking lobby could see inside of the room, either through the window in the door or because of the door being ajar.

75. Nevertheless, Mathes did as she was told and removed all of her clothing.

76. The female jailer then strip searched Mathes, ordering her to lift up her breasts, put her head between her knees, use her hands to spread her buttocks apart, pull her ears forward, pull her hair back, and bend over.

77. Stunned and upset, Mathes cried as she complied with each of the female jailer's orders.

78. No weapons or contraband were found.

79. After completing the strip search, the female jailer gave Mathes an orange jumpsuit, and placed her in a cell.

80. Mathes was traumatized by the strip search perpetrated on her pursuant to defendant's policy on May 7, 2007 at the Woodbury County jail.

**GENERAL FACTUAL BACKGROUND AS TO ALL PLAINTIFFS**

81. From at least 1980 until October 15, 2007, defendant Woodbury County, through the Woodbury County Jail, maintained the following blanket policy, regulation, official decision, custom, or usage with regard to conducting strip searches of pre-trial detainees: any person arrested on a charge of a serious misdemeanor and booked into the Woodbury County Jail was strip searched without any individualized, reasonable suspicion, based on articulable facts that the person to be strip searched is concealing contraband, drugs, or weapons, and without regard to the scope of the particular intrusion, the manner in which the strip search is conducted, the justification for initiating the strip search, and the place in which the strip search is conducted.

82. From at least 1980 until October 15, 2007, Woodbury County's policy failed to weigh the need for strip searching the plaintiffs, or others similarly situated, against the invasion of personal rights entailed in the search, in violation of the Fourth Amendment to the United States Constitution.

9
Case 5:07-cv-04014-MWB   Document 66   Filed 08/18/08   Page 9 of 20

83. From at least 1980 until October 15, 2007, the Woodbury County Sheriff's Department had a policy, regulation, official decision, custom, or usage with regard to strip searching pre-trial detainees including the plaintiffs and others similarly situated, which violated the plaintiffs' rights, and the rights of other similarly situated, to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution.

84. It was and is the duty of the defendant Woodbury County Sherriff's Department to follow the Constitution, and applicable case law on strip searches provided fair warning to defendants that the blanket policy violated the Constitution.

85. The strip searches were demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signified degradation and submission, damaging the plaintiffs and those similarly situated.

**GENERAL FACTUAL BACKGROUND AS TO THE PROPOSED CLASS**

86. At all times material, strip searches performed on detainees arrested for serious misdemeanors were without regard to whether the arrestee presented any sort of concern, profile, or suspicion of being dangerous to officers or possessing contraband.

87. Class certification is appropriate under Federal Rule of Civil Procedure 23(a), 23(b)(1)(A), and in addition or in the alternative, 23(b)(3).

88. Maureen Rattray filed her original Complaint on February 13, 2007. On information and belief, from February 13, 2005 until October 15, 2007 approximately 1750 individuals were arrested on a serious misdemeanor charge and subjected to the Woodbury County jail's unlawful blanket strip search policy, which continued until October 15, 2007 at 3:00 p.m., making joinder of the individual claims impracticable and satisfying Rule 23(a)'s "numerosity" requirement.

89. Plaintiffs Rattray, Lambert and Mathes and the potential class' claims are all based on a single, unwritten, across-the-board strip search policy effectuated by the defendants, thus making the claims common to one another. While factual differences may exist as to the exact circumstances of the searches performed on the plaintiffs and the search(es) performed on the potential class members, a constant still remains: the across-the-board policy, satisfying Rule 23(a)'s "commonality" requirement.

90. Plaintiffs' claims rest on the constitutionality of the strip search policy concerning serious misdemeanor arrestees, the same legal theory on which the class claim rests.

91. While not all happening at the same time or all at once (a single event), the action giving rise to all of the claims is the strip search of an arrestee booked for a serious misdemeanor, and the legal theory underlying the plaintiffs' claim and the claims of the potential class is the right to be free of unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution, thus satisfying Rule 23(a)'s "typicality" requirement.

92. Plaintiffs share the potential class' interest in securing judgment against the defendants that will fully and fairly compensate them for their injuries and damages, and they are willing to be the class representatives and do not believe that their interests are in any way antagonistic to or at the expense of other potential class members, satisfying the "adequacy of representation" requirement of Rule 23(a).

93. Competent counsel represent the plaintiffs and will represent the class, thus satisfying Rule 23(a)'s "adequacy of representation" requirement.

94. The plaintiffs, as class representatives, may maintain the proposed class action under Federal Rule 23(b)(1)(A), and in addition, or in the alternative, Federal Rule 23(b)(3).

95. With regard to Rule 23(b)(1)(A), common questions of law and fact predominate the claims of the proposed class, resting on the constitutionality of defendant Woodbury County's strip search policy and the constitutionality of the acts and omissions of defendants Parrett and Aspleaf relating to the policy, and litigating plaintiffs' claims and the potential class members' claims separately could result in multiple conflicting and/or inconsistent judgments.

96. The class can also be certified under Rule 23(b)(1)(A) because defendants are obliged by law to treat the members of the class alike.

97. Because of the size of the potential class and the fact that both the plaintiffs' individual claims and the putative class' claim rest on the constitutionality of defendant's unwritten, across-the board strip search policy, litigating the plaintiffs' and the potential class' claims as a class action is the superior method for adjudicating the claims, satisfying the "predominance" requirement of Rule 23(b)(3).

98. Further, the policy at issue is across-the-board and without exception such that liability based on that policy can be determined on a class-wide rather than an individual basis, thus satisfying Rule 23(b)(3)'s "superiority" requirement.

99. In addition, many of the potential class members may not know that any assertion of legal rights exists or have the means or "know-how" to pursue litigation, also satisfying Rule 23(b)(3)'s "superiority" prerequisite.

100. Until October 15, 2007, at 3:00 p.m., the Woodbury County Sheriff's Department had a policy, regulation, official decision, custom, or usage applying to those arrested for anything greater than a simple misdemeanor that violated such arrestees' Fourth Amendment rights.

101. The policy, regulation, official decision, custom, or usage relied upon by Woodbury County jailers to strip search the plaintiffs and potential class members violated their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution.

102. The potential class members have suffered damages as a result of defendants' violation of their Constitutional rights.

## COUNT I

### UNREASONABLE SEARCH AND SEIZURE OF PERSON IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS TO PLAINTIFFS RATTRAY, LAMBERT AND MATHES AGAINST DEFENDANT WOODBURY COUNTY

103. Plaintiffs incorporate paragraphs 1 through 102 above as though fully set forth herein.

104. The Woodbury County Sherriff's Department's policy, regulation, official decision, custom, or usage for strip searching those arrested for offenses greater than a simple misdemeanor is that those arrestees will be strip searched, as were plaintiffs, without an individualized reasonable suspicion, based on articulable facts, that the arrestee is concealing contraband or a weapon, and without regard to the scope of the particular intrusion, the manner in which the strip search is conducted, the justification for initiating the strip search, and the place in which the strip search is conducted.

105. Defendant Woodbury County, through its agents, servants and employees in their official capacities, established a policy, regulation, official decision, custom, or usage reckless or in deliberate indifference to the rights of persons in the position of the plaintiffs.

106. Defendant Woodbury County has established, maintained, and enforced policies, regulations, official decisions, customs, or usages which unconstitutionally deprive its citizens of

the right to be free of unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

107. Woodbury County and its policy makers had actual or constructive knowledge of the blanket strip search policy, regulation, official decision, custom, or usage applied to those arrested for offenses greater than a simple misdemeanor.

108. Plaintiffs were subjected to this official Woodbury County policy, regulation, official decision, custom, or usage when they were unreasonably searched.

109. Defendant Woodbury County's policy, regulation, official decision, custom, or usage in general and as against plaintiffs in particular, was purposeful and intentional.

110. During all times mentioned herein, the unconstitutional strip search performed on plaintiffs at the Woodbury County Jail by Woodbury County jailers were executed under color of state law.

111. Defendant Woodbury County deprived plaintiffs of the rights guaranteed to them under them Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

112. Plaintiffs have been damaged as a direct and proximate result of defendant's acts and omissions as set out in this complaint.

WHEREFORE, Plaintiffs Maureen Rattray, Lisa Lambert and Lori Mathes pray for judgment against defendant Woodbury County, in an amount which will fully and fairly compensate them for their injuries and damages, for attorneys' fees, for interest and costs as allowed by law and for such other and further relief as the court deems appropriate.

# COUNT II

## UNREASONABLE SEARCH AND SEIZURE OF PERSON IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS TO THE CLASS AGAINST DEFENDANT WOODBURY COUNTY

113. Plaintiffs incorporate the allegations of paragraphs 1 through 112 as though fully set forth herein.

114. Until October 15, 2007, at 3:00 p.m., the Woodbury County Sheriff's Department had a policy, policy, regulation, official decision, custom, or usage for strip searching those arrested for offenses greater than a simple misdemeanor is that those arrestees would be strip searched without an individualized reasonable suspicion, based on articulable facts, that the arrestee was concealing contraband or a weapon, and without regard to the scope of the particular intrusion, the manner in which the strip search was conducted, the justification for initiating the strip search, and the place in which the strip search was conducted.

115. Defendant Woodbury County, through its agents, servants and employees in their official capacities, established a policy, regulation, official decision, custom, or usage reckless or deliberate indifference to the rights of the potential class members.

116. Defendant Woodbury County established, maintained, and enforced policies, regulations, official decisions, customs, or usages which unconstitutionally deprive its citizens of the right to be free of unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

117. Woodbury County and its policy makers had actual or constructive knowledge of the strip search policy, regulation, official decision, custom, or usage applied to those arrested and booked into the jail for any offense greater than a simple misdemeanor.

118. The potential class members were subjected to this official Woodbury County policy, regulation, official decision, custom, or usage when they were booked into the Woodbury County Jail.

119. During all times referred to herein, the unconstitutional strip searches performed on the class members at the Woodbury County Jail by Woodbury County jailers were executed under color of state law.

120. Defendant Woodbury County deprived the class members of their rights as guaranteed under the Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

121. The class members have been damaged as a direct and proximate result of defendant Woodbury County's acts and omissions as set out in the complaint.

WHEREFORE, Plaintiffs Maureen Rattray, Lisa Lambert and Lori Mathes as class representatives, pray for judgment against defendant Woodbury County, in an amount which will fully and fairly compensate the class for their injuries and damages, for attorneys' fees, for interest and costs as allowed by law and for such other and further relief as the court deems appropriate.

## COUNT III

### UNREASONABLE SEARCH AND SEIZURE OF PERSON IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS TO PLAINTIFFS RATTRAY, LAMBERT AND MATHES AGAINST DEFENDANTS PARRETT AND ASPLEAF

122. Plaintiffs incorporate the allegations of paragraphs 1 through 121 as though fully set forth herein.

123. Defendants Glenn Parrett and Robert Aspleaf are policy makers for the Woodbury County Jail and/or they carry out and enforced its policies.

124. At all times material hereto, defendants Parrett and Aspleaf maintained or enforced a policy and practice of conducting strip searches and visual body cavity searches of all persons who were admitted to the Woodbury County Jail, regardless whether there was individualized reasonable suspicion that an individual was concealing weapons or contraband.

125. Defendants Parrett and Aspleaf knew or should have known that the strip search policy and practice at the Woodbury County Jail, as implemented by its personnel, would directly result in jailers conducting unconstitutional searches of every man and woman who was held in the jail on a serious misdemeanor charge.

126. Defendant Parrett and Aspleaf knew or should have known that it was clearly established law long before 2005 that it was unconstitutional to perform such searches absent individualized reasonable suspicion.

127. Defendants Parrett and Aspleaf maintained or enforced the policy and practice of conducting routine strip searches and body cavity searches, without legal authority or any reason to believe the men and women so searched had anything concealed on their person.

128. Even after defendants Parrett and Aspleaf had actual notice that the above referenced policy and practice of strip searching women and men was unconstitutional, they continued to maintain or enforce that unconstitutional policy and practice.

129. Plaintiffs have been damaged as a direct and proximate result of defendants' acts and omissions as set out in this Complaint.

WHEREFORE, Plaintiffs Maureen Rattray, Lisa Lambert and Lori Mathes pray for judgment against defendants in an amount which will fully and fairly compensate them for their injuries and damages, for attorney's fees, for interest and costs as allowed by law and for such other and further relief as the court deems appropriate.

# COUNT IV

## UNREASONABLE SEARCH AND SEIZURE OF PERSON IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS TO THE CLASS AGAINST DEFENDANTS PARRETT AND ASPLEAF

130. Plaintiffs incorporate the allegations of paragraphs 1 through 129 as though fully set forth herein.

131. Defendants Glenn Parrett and Robert Aspleaf are policy makers for the Woodbury County Jail and/or they carry out and enforced its policies.

132. At all times material hereto, defendants Parrett and Aspleaf maintained or enforced a policy and practice of conducting strip searches and visual body cavity searches of all persons who were admitted to the Woodbury County Jail, regardless whether there was individualized reasonable suspicion that an individual was concealing weapons or contraband.

133. Defendants Parrett and Aspleaf knew or should have known that the strip search policy and practice at the Woodbury County Jail, as implemented by its personnel, would directly result in jailers conducting unconstitutional searches of every man and woman who was held in the jail on a serious misdemeanor charge.

134. Defendant Parrett and Aspleaf knew or should have known that it was clearly established law long before 2005 that it was unconstitutional to perform such searches absent individualized reasonable suspicion.

135. Defendants Parrett and Aspleaf maintained or enforced the policy and practice of conducting routine strip searches and body cavity searches, without legal authority or any reason to believe the men and women so searched had anything concealed on their person.

136. Even after defendants Parrett and Aspleaf had actual notice that the above referenced policy and practice of strip searching women and men was unconstitutional, they continued to maintain or enforce that unconstitutional policy and practice.

137. The class members have been damaged as a direct and proximate result of defendants' acts and omissions as set out in this Complaint.

WHEREFORE, Plaintiffs Maureen Rattray, Lisa Lambert and Lori Mathes, as class representatives, pray for judgment against defendants in an amount which will fully and fairly compensate the class for their injuries and damages, for attorney's fees, for interest and costs as allowed by law and for such other and further relief as the court deems appropriate.

## **JURY DEMAND**

COMES NOW the plaintiffs, Maureen Rattray, Lisa Lambert and Lori Mathes, as individuals and representatives of the proposed class, and respectfully request a trial by jury on their claims.

Dated: <u>August 15, 2008</u>

__/s/_____
Jean Pendleton  IA AT 0006150
PENDLETON LAW FIRM, P.C.
1501 42nd Street, Suite 445
West Des Moines, Iowa 50266
Telephone: (515) 222-9111
Facsimile: (515) 243-0299
jpendleton@pendletonlawfirm.co
ATTORNEY FOR PLAINTIFFS

_____/s/_____
Joan M. Fletcher, AT0002606
Megan J. Erickson, AT00009430
DICKINSON LAW FIRM, P.C.
699 Walnut Street, Ste. 1600
Des Moines, Iowa 50309-3986
Telephone: (515) 244-2600
Facsimile: (515) 246-4550
jfletcher@dickinsonlaw.com
merickson@dickinsonlaw.com
ATTORNEYS FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of August, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

Douglas L. Phillips
Klass Law Firm, LLP
4280 Sergeant Rd.
Mayfair Center, Suite 290
Sioux City, IA  51106

ATTORNEY FOR DEFENDANT

                                            /s/
                                        Sheryl L. Fountas

F:\JFletcher\WP\Rattray, Maureen\First Amended Complaint-08-08-08draft.doc