**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| MAUREEN RATTRAY, LISA LAMBERT, and LORI MATHES, | No. C07-4014-MWB |
| Plaintiffs, | (No. C08-4008-MWB) (No. C07-4032-MWB) |
| vs. | MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF RATTRAY'S MOTION TO CERTIFY CLASS |
| WOODBURY COUNTY, IOWA, GLENN J. PARRETT, individually and as Sheriff of Woodbury County, and ROBERT E. ASPLEAF, individually and as Assistant Chief/Deputy Sheriff of Woodbury County, | |
| Defendants. | |

---

**TABLE OF CONTENTS**

I.  **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
    A.  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
    B.  *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

II.  **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
    A.  *Requirements For Class Certification* . . . . . . . . . . . . . . . . . . . . .  6
    B.  *Rule 23(a) Prerequisites* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
        1.  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . .  8
        2.  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
            a.  *Numerosity* . . . . . . . . . . . . . . . . . . . . . . . . .  11
            b.  *Typicality and commonality* . . . . . . . . . . . . . . .  14
            c.  *Adequacy of representation* . . . . . . . . . . . . . .  17
    C.  *Rule 23(b) Requirements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

  1.  *Certification pursuant to Rule 23(b)(1)(A)* . . . . . . . . . . . . 23
    *a.*  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 23
    *b.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
  2.  *Certification pursuant to Rule 23(b)(3)* . . . . . . . . . . . . . . 26
    *a.*  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 26
    *b.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      *i.*  *Predominance* . . . . . . . . . . . . . . . . . . . . . 28
      *ii.*  *Superiority of the class action* . . . . . . . . . . . 35
  D. *Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

T he lead plaintiff in these consolidated cases seeks certification of a class defined as all persons arrested on a serious misdemeanor charge and strip searched pursuant to the defendant county jail's across-the-board strip search policy during a twenty-one month period prior to a change in the policy. The plaintiff maintains that the class may number more than 1,750 people and that it should be certified, either pursuant to Rule 23(b)(1), to avoid the risk of inconsistent or varying adjudications, or pursuant to Rule 23(b)(3), because the questions of law or fact common to the class members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The defendant, however, contends that the plaintiff can neither satisfy the prerequisites to class certification under Rule 23(a), nor demonstrate that certification pursuant to Rule 23(b)(1) or (b)(3) is appropriate. In addition, even if class certification is otherwise appropriate, the defendant contends that the timeframe for the proposed class exceeds the statute of limitations period for which any relief can be obtained.

2

## I. INTRODUCTION

### A. Factual Background

Lead plaintiff Maureen Rattray alleges that she was arrested by a Sioux City Police Officer on August 16, 2006, for operating "a motor vehicle while under the influence of an alcoholic beverage or other drug or combination of such substances or while having an alcohol concentration of 0.08 or more" in violation of IOWA CODE § 321J.2. She was transported to the Woodbury County Jail, where she alleges that she was booked and, before being placed in a holding cell, strip searched pursuant to Woodbury County's policy of strip searching all arrestees charged with offenses greater than a simple misdemeanor, without any requirement of individualized reasonable suspicion that she was concealing contraband. The policy in question had been in place since at least the early 1980s and possibly since 1971. The parties agree that the County changed the policy at 3:00 p.m. on October 15, 2007, to eliminate blanket strip searches of arrestees on serious misdemeanor or higher charges without reasonable suspicion.

Rattray maintains that approximately 11,000 arrestees are booked into the Woodbury County Jail each year. From responses to discovery provided by the County in this litigation, Rattray estimates that approximately 5,269 individuals were arrested on serious misdemeanor charges from 2000 to 2007. She estimates, further, that approximately 1,757 individuals fall within the proposed class period from February 13, 2005, until October 15, 2007. Rattray's count is an estimate, even though Woodbury County provided data listing the names and related information concerning individuals arrested and booked into the Woodbury County Jail on serious misdemeanors from 2000 to 2007, because of duplicate entries and repeated records, different name spellings, and missing names. For example, Rattray points out that she does not appear in the data produced.

3

## B.  Procedural Background

On February 13, 2007, Rattray filed her Complaint (docket no. 2) pursuant to 42 U.S.C. § 1983 against defendant Woodbury County alleging that her strip search violated the Fourth and Fourteenth Amendments to the United States Constitution.  She originally asserted only an individual claim of unreasonable search and seizure of her person and sought only individual relief, consisting of damages, attorneys' fees, interest and costs, and such other relief as may be just in the premises.  The County answered Rattray's original Complaint on March 9, 2007, denying Rattray's claim.  *See* docket no. 7.  Jury trial in this matter was originally scheduled for March 31, 2008.

On October 31, 2007, Rattray was granted leave to file her First Amended Complaint (docket no. 24), which adds general factual allegations as to a proposed class.  *See* First Amended Complaint, ¶¶ 48-65.  The First Amended Complaint also includes a new Count II seeking relief from unreasonable searches and seizures in violation of the Fourth Amendment on behalf of a class of individuals strip searched upon being booked into the Woodbury County Jail.  The relief sought on behalf of the class on this Count is, again, damages, attorneys' fees, interest and costs, and such other relief as may be just in the premises.  The First Amended Complaint also includes a new Count III for declaratory and injunctive relief seeking an order directing the County to desist immediately from strip searching individuals booked into the Woodbury County Jail for an offense greater than a serious misdemeanor absent any particularized suspicion that the individuals in question have either contraband or weapons, and a preliminary injunction and permanent injunction to the same effect.[1]  On November 8, 2007, the County filed its Answer (docket no. 26)

---

[1]The court considered it likely that the claim for injunctive relief had been mooted, in whole or in part, by the parties' agreement that the County changed its strip search
(continued…)

4

to Rattray's First Amended Complaint denying all three claims therein asserted. After Rattray amended her Complaint, trial in this matter was rescheduled to begin on February 16, 2009.

On April 29, 2008, Rattray filed a Motion To Consolidate (docket no. 49), seeking to consolidate this case with two others, *Lambert v. Woodbury County*, No. C08-4008-MWB (N.D. Iowa), and *Mathes v. Woodbury County*, No. C08-4032-MWB (N.D. Iowa), involving similar claims of unconstitutional strip searches by the County. A magistrate judge of this court granted that motion by order (docket no. 56), dated May 27, 2008, consolidating the three cases with this case as the lead one. Once again, the magistrate judge struck the trial dates and pre-trial deadlines, and directed the parties to file a new proposed Scheduling Order and Discovery Plan in the consolidated case. Trial in the consolidated actions was eventually scheduled to begin on October 12, 2009. Thereafter, on August 15, 2008, the plaintiffs in the consolidated case filed an unresisted motion (docket no. 64) to file an Amended And Consolidated Class Action Complaint And Jury Demand (Amended Class Action Complaint). A magistrate judge granted that motion on August 18, 2008, and the Amended Class Action Complaint (docket no. 66) was, consequently, filed the same day. The Amended Class Action Complaint adds additional defendants—Glenn Parrett, the Sheriff of Woodbury County, and Robert Aspleaf, Assistant Chief/Deputy Sheriff, named in their official and individual capacities—and adds a cause of action against these defendants pursuant to 42 U.S.C. § 1983, on behalf of the

---

[1](...continued)
policy at 3:00 p.m. on October 15, 2007, to eliminate blanket strip searches of arrestees on serious misdemeanor or higher charges without reasonable suspicion. The court was not required to consider the possible mootness of the claim for injunctive relief, however, because that claim was eliminated in the subsequent Amended Class Action Complaint described, below, in the body of this opinion.

individual plaintiffs and the proposed class, alleging that these defendants enforced or maintained the County's policy and practice of conducting strip searches and visual body cavity searches of all persons who were admitted to the Woodbury County Jail, regardless of whether there was an individualized reasonable suspicion that an individual was concealing weapons or contraband. The Amended Class Action Complaint also eliminates the count requesting injunctive relief that was included in Rattray's (and Lambert's) Complaints.

On April 28, 2008, Rattray filed her Motion Directing That Action Proceed As Class Action, Determining The Class, And Restricting Communication With Class Members (Motion To Certify Class) (docket no. 44), which is now before the court. The County filed a Resistance (docket no. 52) to the Motion To Certify Class on May 9, 2008. Both parties requested oral arguments on the motion for class certification. Therefore, by order (docket no. 59), dated July 8, 2008, the court set oral arguments on Rattray's April 28, 2008, Motion To Certify Class for July 15, 2008. However, for the mutual convenience of the parties and the court, the hearing was twice rescheduled, first to July 23, 2008, then to August 8, 2008. *See* Order (docket no. 60); Order (docket no. 61).

At the oral arguments on August 8, 2008, plaintiff Maureen Rattray was represented by Jean Pendleton of the Pendleton Law Firm, P.C., in West Des Moines, Iowa, who argued the motion for the plaintiffs, and Joan M. Fletcher of Dickinson, Mackaman, Tyler & Hagen, P.C., in Des Moines, Iowa. Defendant Woodbury County was represented by Douglas L. Phillips of the Klass Law Firm, L.L.P., in Sioux City, Iowa.[2]

Rattray's Motion To Certify Class is now fully submitted.

---

[2]Because defendants Glenn Parrett and Robert Aspleaf were not added to the case until August 18, 2008, they did not participate in the oral arguments on the Motion To Certify Class.

## II. LEGAL ANALYSIS

### A. Requirements For Class Certification

Rule 23 of the Federal Rules of Civil Procedure establishes that the district court may certify a class action if the action satisfies certain prerequisites in subsection (a) *and* the action satisfies the requirements for one of the types of class actions defined in subsection (b). FED. R. CIV. P. 23.[3] The district court's ruling granting or denying class certification is reviewed for abuse of discretion. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1118 (8th Cir. 2005); *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). "[T]he court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (quoting *General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). Thus, the court must first determine whether the requirements of Rule 23(a) are met, then determine whether the specific requirements of one of the types of class actions set forth in Rule 23(b) are met. *Id.* at 786; *In re St. Jude Med., Inc.*, 425 F.3d at 1119. "Though class certification is not the time to address the merits of the parties' claims and defenses, the 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." *Id.*

### B. Rule 23(a) Prerequisites

Rule 23(a) establishes the following prerequisites for a class action:

> **(a)  Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

---

[3]In 2007, amendments were made to Rule 23 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules"; thus, "[t]hese changes are intended to be stylistic only." FED. R. CIV. P. 23, Advisory Committee Notes, 2007 Amendments.

7

> **(1)** the class is so numerous that joinder of all members is impracticable;
>
> **(2)** there are questions of law or fact common to the class;
>
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> **(4)** the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These requirements are usually characterized as "numerosity," "commonality," "typicality," and "adequacy of representation." *Bartleson v. Winnebago Indus., Inc.*, 219 F.R.D. 629, 638 (N.D. Iowa 2003). The parties dispute whether Rattray can satisfy these requirements.

### 1. *Arguments of the parties*

Rattray contends that the proposed class action meets all of the prerequisites of Rule 23(a). More specifically, she argues that she can meet the "numerosity" requirement, because, in this case, the proposed class consists of approximately 1,757 persons, and such numbers are sufficient to render identification difficult—and have, indeed, done so here—so that individual joinder of class members is impracticable. She also argues that the class meets the "commonality" requirement of Rule 23(a), because the primary question of law linking the class members, which she characterizes as whether a blanket strip search policy, without regard to whether reasonable suspicion existed, violates the Constitution, is substantially related to the resolution of the litigation, even if the individuals are not identically situated. Next, she contends that her claim meets the "typicality" requirement, as all of the class members' claims, like hers, arise from similar

circumstances, a strip search conducted without individualized reasonable suspicion after arrest on a serious misdemeanor charge, and all have the same legal basis, a violation of the arrestees' Fourth Amendment rights. Moreover, she contends that the same evidence will be used to prove her claim and the class's claim, including testimony of County administrators and employees, the County's computer data, and the County's written discovery responses. Finally, she asserts that she meets the "adequacy of representation" requirement, where the County does not challenge the competency of her counsel, there is no hint of collusion in the suit, and she can think of no circumstances in which her individual interests would be adverse to those of the class or under which she would be unable to represent the class adequately.

The County, however, contends that the proposed class does not satisfy any of the prerequisites of Rule 23(a). Contrary to Rattray's argument, the County contends that the proposed class is not so numerous that joinder of all members is impracticable, even where Rattray contends that she cannot precisely state the size of the class and blames the County for that problem. The County points out that it provided Rattray with the name, address, and telephone number of every person arrested for a serious misdemeanor for the period from late 2000 to 2007, so that the precise class size is known. The County also argues that joinder is not impracticable, where most of the arrestees reside in the northwest Iowa area, and their identities and last known locations have been provided to the lead plaintiff. Consequently, the County asserts that judicial efficiency can be ensured by joinder and intervention, and there is no showing that joinder would be impracticable, extremely difficult, or even meaningfully inconvenient.

Next, the County contends that Rattray's characterization of the "commonality" and "typicality" requirements is overly simplistic, where the reality is that the merits of each individual case will turn on individual facts. Even though the County admits that it had

a blanket strip search policy, that the plaintiff was strip searched in accordance with that policy, and that the policy was in place for many years and would have applied to all persons arrested on charges greater than a simple misdemeanor, the County contends that these facts do not establish commonality and typicality. Rather, the County contends that each case will turn on whether the officers had reasonable suspicion that the arrestee in question was concealing contraband, and there is no evidence that any serious misdemeanant was similarly situated to Maureen Rattray. For example, the County points out that there are at least 278 different serious misdemeanors identified in the Iowa Code, some of which, by their nature, give rise to a reasonable suspicion warranting a strip search. The County also asserts that there is no evidence in the record concerning the nature of the charges against each arrestee or the nature of each arrestee's behavior at the time of arrest or booking. The County also points out that Rattray complains about both the strip search itself and the way that she was treated during the strip search, but there is no evidence that other potential class members will claim that they were assaulted, humiliated, or traumatized by or during a strip search. Because of such potential variations, the County contends that no measure of judicial economy will be achieved by certifying a class whose only common claim is that its members were strip searched, where the legality of each search will require examination of the individual circumstances of the arrest and search.

Finally, as to adequacy of representation, the County calls into question Rattray's assertion that she will fairly and adequately represent the interests of the class, because she only belatedly asserted a claim on behalf of the putative class. More specifically, the County challenges Rattray's assertion that she first realized at depositions in August of 2007 that the County's policy was to strip search all arrestees charged with an offense greater than a simple misdemeanor, because that assertion is undermined by allegations in

10

paragraph 40 of her own original Complaint setting out such an understanding of the policy. The County contends that what is evidently a delay in seeking class certification bears upon the adequacy of representation. For example, the County argues that, until Rattray filed her motion to amend, she showed no interest in protecting the interests of a class and, instead, focused exclusively on herself.

### 2. Analysis

Because the County contends that Rattray does not satisfy any of the prerequisites for class certification under Rule 23(a), the court will consider each of those prerequisites in turn.

### a. Numerosity

Twenty years ago, the Eighth Circuit Court of Appeals observed that it had "not established any rigid rules regarding the necessary size of the class" to satisfy the "numerosity" requirement of Rule 23(a), *see Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *cert. granted and judgment vacated on other grounds*, 487 U.S. 1229 (1988), and this court has found no subsequent decision doing so. The Eighth Circuit Court of Appeals has observed, however, that, "[i]n determining whether the 'numerosity' requirement is satisfied, the number of persons in a proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant." *Id.* (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1987)). In *Sanft v. Winnebago Industries, Inc.*, 214 F.R.D. 514 (N.D. Iowa 2003), this court also explained the "numerosity" requirement of Rule 23(a) as follows:

> To meet this requirement, the court must conclude that a class is sufficiently large so as to render joinder of all its members impracticable in light of the particular circumstances of the case. *Arkansas Educ. Ass'n v. Board of Educ. of*

11

> *Portland, Arkansas School Dist.,* 446 F.2d 763, 765 (8th Cir.
> 1971); *accord Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.
> 1993). Satisfaction of the numerosity requirement does not
> require that joinder is impossible, but only that plaintiff will
> suffer a strong litigational hardship or inconvenience if joinder
> is required. *Arkansas Educ. Ass'n,* 446 F.2d at 765; *accord
> Familienstiftung v. Askin,* 178 F.R.D. 405, 409 (S.D.N.Y.
> 1998) (noting that "[i]mpracticability does not mean
> impossibility, but rather difficulty or inconvenience."); *In re
> NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 508
> (S.D.N.Y. 1996) (observing that "[i]mpracticability means
> difficulty or inconvenience of joinder; the rule does not require
> impossibility of joinder.").

*Sanft,* 214 F.R.D. at 520; *see also Bartleson v. Winnebago Indus., Inc.*, 219 F.R.D. 629,

639 (N.D. Iowa 2003) (quoting *Sanft*). A relatively small number of potential plaintiffs

does not necessarily defeat class certification. *See, e.g., id.* at 214 F.R.D. at 522 (noting

that courts had certified classes smaller than the 51 persons at issue in that case). For

example, "geographic dispersion" of the potential plaintiffs may support a finding that

joinder is impracticable, even for relatively small numbers of potential plaintiffs. *See id.*,

214 F.R.D. at 523 (citing cases). The difficulty of identifying potential class members is

also a pertinent consideration, as are the financial resources of the class members, the class

members' continued relationship to the defendant, any fear that such a continued

relationship might discourage individual action, and judicial efficiency. *Id.* at 523-26.

Here, contrary to the County's assertions, the court finds that the "numerosity"

requirement is met as to Rattray's proposed class. The County's assertion that a class

totaling approximately 1750 is not so large as to render joinder impracticable is suspect,

and the County's assertion that it has provided sufficient information to identify all

potential class members here is downright disingenuous, where Rattray has demonstrated

several deficiencies in the identification of potential class members from the County's

12

discovery responses.[4] *Id.* (numbers of potential plaintiffs and difficulties in identifying them are relevant to the "numerosity" requirement); *see also Emanuel*, 828 F.2d at 444 (the number of potential plaintiffs is relevant, but not the only factor pertinent to "numerosity"). Not only are there difficulties with variant spellings of names and incomplete or no longer accurate contact information, but the records may simply be incomplete, as demonstrated by the absence of Rattray's name from the County's discovery responses. The numbers involved and the deficiencies in the identifications available, standing alone, suggest that joinder is impracticable, because even if not impossible, joinder will impose a strong litigational hardship or inconvenience on the named plaintiff. *Id.* at 520 (the test is not impossibility, but whether joinder will impose a strong litigational hardship or inconvenience on the plaintiff). Moreover, while it is fair to assume that potential class members were in northwest Iowa *at one time or another*, or they would not have found themselves in the Woodbury County Jail, it is not fair to assume that they are necessarily no more geographically dispersed now, where no other common factor, such as common employment, was likely to hold them to the area. *Id.* at 523 ("geographical dispersion" is relevant and may offset relatively low numbers of potential plaintiffs). Under these circumstances, involving potentially 1750 or more plaintiffs who cannot be adequately identified and who cannot be shown to have remained in the area or to have had any reason to remain in the area, the County's assertion that there is no showing that joinder would be impracticable, extremely difficult, or even meaningfully inconvenient is unrealistic.

---

[4]The court does not suggest that the County's discovery responses were not made in good faith, only that the information provided is, for whatever reason, deficient to make adequate identification of all potential plaintiffs possible.

While it is possible that few of the potential plaintiffs would have the inclination to pursue a claim individually, in light of the personal inconvenience and humiliation that might be involved in coming forward to pursue the claim at issue in this case, that factor also weighs in favor of finding that the numerosity requirement is met here. *Cf. id.* at 523-25 (considering whether various circumstances might discourage individual action). By the same token, the inconvenience of trying potentially hundreds of individual suits would be staggering, *see Emanuel*, 828 F.2d at 444 (considering the inconvenience of trying individual suits), and judicial economy arising from avoiding potentially hundreds of individual actions also suggests that the "numerosity" requirement is met here. *See Sanft*, 214 F.R.D. at 526 (considering the judicial economy in avoiding a multiplicity of suits).

Therefore, the court finds that the "numerosity" prerequisite of Rule 23(a) is met here.

### b.    *Typicality and commonality*

Rule 23(a) also requires "typicality" and "commonality." FED. R. CIV. P. 23(a)(2) and (3). The Eighth Circuit Court of Appeals explained in *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 Cir. 1995), *cert. denied sub nom. Crehan v. DeBoer*, 517 U.S. 1156 (1996), that "commonality" and "typicality" are separate but related requirements of class certification under Rule 23(a). *DeBoer*, 64 F.3d at 1174-75. In *DeBoer*, the Eighth Circuit Court of Appeals explained that

> [c]ommonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question "'linking the class members is substantially related to the resolution of the litigation.'" *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (quoting *American Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)), *cert. denied*, 460 U.S. 1083, 103 S. Ct. 1772, 76 L. Ed. 2d 345 (1983).

14

*DeBoer*, 64 F.3d at 1174. On the other hand, the "typicality" requirement imposes upon the plaintiff the burden, "fairly easily met," of showing that "class members have claims similar to the named plaintiff." *Id.* (again citing *Paxton*, 688 F.2d at 562).

Here, it is apparent that "commonality" is met, as Rattray argues, where all of the class members' claims would be linked by the factual question of whether a blanket strip search policy existed and the legal question of whether such a policy violates the Fourth Amendment to the United States Constitution, and that legal question is related to the resolution of this litigation. *Id.* ("commonality" is met where the legal question linking the class members is substantially related to the resolution of the litigation). Even to the extent that the County contends that each potential class member's claim turns on the individualized question of whether or not that individual was or could have been searched pursuant to reasonable suspicion, based on that individual's *factual* circumstances, the class members are linked by the common *legal* question of whether reasonable suspicion to strip search an individual that was apparent from the circumstances of that individual at the time of that individual's strip search bars liability or damages on that individual's claim that he or she was strip searched pursuant to an unconstitutional blanket policy. Moreover, "typicality" is satisfied here, because all of the potential class members have a claim similar to Rattray's that they were strip searched pursuant to such an allegedly unconstitutional blanket policy. *Id.* ("typicality" requires a showing that class members have claims similar to the named plaintiff's claim).

Indeed, numerous courts considering certification of classes in recent strip-search cases have recognized that "commonality" is satisfied by the overarching questions of the existence and legality of a blanket strip-search policy, even where, as here, the defendants have asserted that the legality of individual searches (or at least entitlement to damages for

15

any such searches) may ultimately turn on whether or not reasonable suspicion for a strip search was discernable from the circumstances of the individual in question. *See Eddleman v. Jefferson County, Ky.*, 96 F.3d 1448, 1996 WL 495013, *3-*4 (6th Cir. 1996) (table op.) (commonality for purposes of Rule 23(a) was satisfied where the legal theory of all potential class members was that they were subjected to unconstitutional searches pursuant to a blanket policy or custom after being arrested for minor offenses, without reasonable suspicion as to each individual, and such common legal theories bound the class, "even if some sets of facts are more severe than others" or "the fact that some individuals may fail to meet the qualifications for the class because it can be shown that there was reasonable suspicion to search them"); *Young v. County of Cook*, 2007 WL 1239820, *5 (N.D. Ill. April 25, 2007) (for purposes of Rule 23(a), the defendants' argument that a proposed class was not viable because it included men charged with all types of crimes with varied criminal histories, including, for example, detainees accused of felonies or drug crimes, who, the defendants argued, could properly be strip searched, "misse[d] the point," because the claims of the proposed classes were premised upon contentions that the defendants acted pursuant to policies and standard practices that were common to all class members); *Kelsey v. County of Schoharie*, 2007 WL 603406, *9 (N.D.N.Y. Feb. 21, 2007) (even though the defendants contended that challenges to a strip-search process would turn on a fact-intensive evaluation of each inmate's particular experiences, the court held that "commonality" was established for purposes of Rule 23(a), where the constitutionality of the jail's policies and practices remained to be determined); *Sutton v. Hopkins County, Ky.*, 2007 WL 119892, * (W.D. Ky. Jan. 11, 2007) (although the defendants asserted that the "commonality" requirement was not met, because a "blanket" strip-search policy did not exist and because of differences that might arise in establishing an individual class member's right to recover, such as assessing the

16

reasonableness of each search and determining damages, the court found the requirement was met, where the plaintiffs had alleged that the defendants had a policy, custom, or practice of strip-searching persons on admission to and/or just prior to release from the county jail without regard to whether there existed the requisite individual, reasonable suspicion required by law, and noting that the defendants' arguments were more applicable to Rule 23(b)(3)'s "predominance" requirement); *Dodge v. County of Orange*, 226 F.R.D. 177, 180-81 (S.D.N.Y. 2005) (the court found "commonality" for purposes of Rule 23(a)(2), because "[n]otwithstanding defendants' effort to overcomplicate the analysis, there is in fact one issue that is both common to the claims of every proposed class member and central to each of their claims: the existence or non-existence of a policy at the OCCF of strip searching each and every new pre-trial detainee upon arrival at the jail, regardless of the existence of individualized reasonable suspicion that the new arrival was carrying contraband, based on the nature of the crime charged, the circumstances of the arrest, and the particular characteristics of the arrestee"); *Mack v. Suffolk County*, 191 F.R.D. 16, 23 (D. Mass. 2000) (because "commonality" and "typicality" under Rule 23(a)(2) and (a)(3) do not require that claims be identical, the representative plaintiffs met these requirements as to the proposed class members, where all shared a common legal theory, that the strip searches were unconstitutional because they were conducted pursuant to a blanket strip-search policy, not based on a reasonable suspicion that the individuals searched were concealing weapons or contraband, despite varying defenses to liability which may be raised regarding particular individuals).

For now, the court finds that the "typicality" and "commonality" prerequisites of Rule 23(a)(2) and (a)(3) are met here, where all potential class members are linked by common questions concerning the existence and constitutionality of a blanket strip-search policy and the effect of circumstances giving rise to reasonable suspicion to search an

individual class member. Whether those common questions predominate over questions of whether reasonable suspicion would have existed as to each individual member of the class is a different matter that the court will address in its consideration of whether the proposed class satisfies the requirements of Rule 23(b)(3).

### c. Adequacy of representation

The final Rule 23(a) prerequisite is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "A district court must 'evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a).'" *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). In determining adequacy of representation, the Eighth Circuit Court of Appeals has looked at both the similarity of the proposed representative's claims and circumstances to other class members, so that the interests of the class members will be fairly and adequately represented in their absence, and at the proposed representative's motivation to represent the entire class. *See id.* at 436-37. For example, a named plaintiff may not be an adequate representative if her claim is subject to a unique defense that threatens to play a major role in the litigation. *See id.* at 437. Also, as to the named plaintiff's motivation, "a named plaintiff who lacks the desire to 'vigorously pursue' the interests of potential class members is not a fair and adequate representative of the class." *Id.* (citing *Darms v. McCulloch Oil Corp.*, 720 F.2d 490, 493 (8th Cir. 1983), and finding that the adequacy of the plaintiff to represent the entire class in milk products antitrust litigation was cast in doubt where she testified that she sought to represent only "small convenience stores," not "very large grocery stores" and convenience store chains). This court has specifically noted that a delay in seeking class certification bears on the adequacy of representation of the class. *Sanft*, 214 F.R.D. at 526 n.8 (citing *East Texas Motor Freight v. Rodriguez*,

431 U.S. 395, 405 (1977)). This court explained that, "[t]o analyze the effect of such a delay on the adequacy of representation, the court must balance the prejudice resulting from this delay against counsels' ability, experience and qualifications to conduct this litigation." *Id.* (citing *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 137 (W.D. Pa. 1993); *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y. 1981); *In re Folding Carton Litig.*, 88 F.R.D. 211, 213 (N.D. Ill. 1980); *Sanders v. Faraday Labs., Inc.*, 82 F.R.D. 99, 102 (E.D.N.Y. 1979)). The focus of the "adequate representation" requirement of Rule 23(a)(4) is not just on whether the proposed class representative has common interests with the members of the class, but on "whether the class representativ[e] will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d 562-63.

The court found, above, in its analysis of "commonality" and "typicality" that Rattray's claims are sufficiently similar to the claims of potential class members to satisfy Rule 23(a)(2) and (3), and now finds that they are sufficiently similar that the interests of the class members will be fairly and adequately represented in their absence, so that one factor relevant to the "adequate representation" requirement of Rule 23(a)(4) is satisfied. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d at 436-37 (considering the similarity of the proposed representative's claims and circumstances to other class members). This is so, even though a named plaintiff is not an adequate representative if her claim is subject to a unique defense that threatens to play a major role in the litigation, *see id.* at 437, and the County contends that Rattray's claim turns on the individualized question of whether or not she was or could have been searched pursuant to reasonable suspicion, based on her *factual* circumstances. This defense is not "unique," however, even though whether it bars liability or damages on Rattray's individual claim may ultimately depend upon Rattray's unique circumstances. Rather, it is a defense that applies to all of the potential class

19

members, because the County asserts that the claim of *each* named plaintiff and *each* potential class member turns on whether or not there was reasonable suspicion to strip search that individual in that individual's circumstances. Rattray can adequately represent the potential class members on the non-unique *legal* question of the *viability* of the defense, which is whether reasonable suspicion to strip search an individual that was apparent from the circumstances of that individual at the time of that individual's strip search bars liability or damages on that individual's claim that he or she was strip searched pursuant to an unconstitutional blanket policy.

Whether Rattray is motivated to "vigorously pursue" the interests of the class, however, is a different matter. *See In re Milk Products*, 195 F.3d at 437 ("[A] named plaintiff who lacks the desire to 'vigorously pursue' the interests of potential class members is not a fair and adequate representative of the class.") (citing *Darms*, 720 F.2d at 493). Unlike the named plaintiff in *In re Milk Products*, Rattray has not expressly stated any lack of interest in representing the entire class. *See id.* (the plaintiff testified that she sought to represent only "small convenience stores," not "very large grocery stores" and convenience store chains). Nevertheless, the court has some doubts that Rattray has such a desire, because her motion for class certification is tardy. *See Sanft*, 214 F.R.D. at 526 n.8 (the named plaintiff's delay in seeking certification is a relevant consideration concerning the adequacy of representation). The County is correct that the deadline to add parties had expired in Rattray's case by the time that Rattray filed her First Amended Complaint and sought certification of a class. *See* February 14, 2007, Scheduling Order (docket no. 3) (original scheduling order setting June 1, 2007, as the deadline to add parties). The County is also correct that the existence of a potential class subjected to a blanket strip-search policy was foreshadowed in paragraph 40 of Rattray's original Complaint, filed in February 2007, so that her assertion that she only recognized the

20

potential for class litigation in August 2007 is seriously suspect. Thus, the apparent lack of zeal to represent a class in this case does undermine the adequacy of Rattray's representation of the class. *See Sanft*, 214 F.R.D. at 526 n.8 (finding that undue delay in asserting a class claim is a pertinent factor in determining adequacy of representation); *cf. In re Milk Prods. Antitrust Litig.*, 195 F.3d at 436-37 (considering whether the proposed representative had demonstrated a lack of interest in zealously representing the class as a whole).

The subsequent delay from the filing of Rattray's First Amended Complaint in October 2007, which stated a class claim, to the filing of her motion to certify the class in April 2008 is even more disturbing, because counsel with any experience litigating class actions could reasonably be expected to assess pertinent evidence and to file a motion to certify a class in much less than six months after filing a class claim.[5] As noted above, another focus in the "adequacy of representation" inquiry under Rule 23(a)(4) is "whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d 562-63. Here, although the court knows the plaintiffs' attorneys to be otherwise very capable and experienced, the court notes that the plaintiffs have not shown that their attorneys have any experience with litigating class actions, and the delay here in filing the motion for class certification seems to be indicative of that lack of experience. Thus, when balancing the prejudice resulting from this delay against counsels' ability, experience, and qualifications to conduct this litigation, the court cannot say that the balance demonstrates that counsels' qualifications and experience will necessarily mitigate any prejudice to the potential class members from the delay in seeking

---

[5]A simple interrogatory or an early Rule 30(b)(6) deposition would have easily provided sufficient information to file a motion to certify the class.

class certification. *See Sanft*, 195 F.R.D. at 526 n.8 (noting that such a balancing is required when there has been a delay in seeking class certification).[6] Moreover, the present plaintiffs, potential class members, and the County may all have been prejudiced by the delays here, as the delays may have allowed memories of the circumstances relating to individuals, in particular, and to class members, generally, to fade, witnesses to disperse, and records to be lost.

Therefore, the court is not convinced that the last Rule 23(a) prerequisite, "adequacy of representation" for the class, has been met in this case. Nevertheless, the court will turn to consideration of the requirements of Rule 23(b).

### C. Rule 23(b) Requirements

To obtain certification of a class, the plaintiff must not only satisfy the prerequisites of Rule 23(a), but also demonstrate that the potential class meets the requirements of one of the types of classes defined in Rule 23(b). *See Elizabeth M.*, 458 F.3d at 786 (the court must first determine whether the requirements of Rule 23(a) are met, then determine whether the specific requirements of one of the types of class actions set forth in Rule 23(b) are met); *In re St. Jude Med., Inc.*, 425 F.3d at 1119 (same). Rule 23(b) defines the following types of class actions:

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
> **(1)** prosecuting separate actions by or against individual class members would create a risk of:

---

[6]This is so, even though the County does not challenge the qualifications or experience of counsel as a ground for denying class certification.

**(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

**(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

|  | **(C)** | the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and |
|--|--|--|

|  | **(D)** | the likely difficulties in managing a class action. |
|--|--|--|

FED. R. CIV. P. 23(a), (b).  Rattray asserts that her class should be certified, either pursuant to Rule 23(b)(1), and more specifically still, Rule 23(b)(1)(A), to avoid the risk of inconsistent or varying adjudications, or pursuant to Rule 23(b)(3), because the questions of law or fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[7]

### 1.     *Certification pursuant to Rule 23(b)(1)(A)*

### a.     *Arguments of the parties*

As to certification of a class under Rule 23(b)(1)(A), Rattray concedes that there is little risk of inconsistent liability judgments among the class members, if their claims are brought separately, but that the real reason for certification under Rule 23(b)(1)(A) here is that the County is obligated to treat the members of the class alike as a matter of law or practical necessity.  She argues that federal law required the County to treat every person arrested on a serious misdemeanor charge, that is, every member of the putative class, the same way to comply with the Constitution, so that certification under Rule 23(b)(1)(A) is appropriate.

---

[7]Although Rattray does make some references to certification of a class under Rule 23(b)(2) to vindicate the class members' civil or constitutional rights, *see* Plaintiff's Brief (docket no. 44-6), 6-7, she only expressly argues that the class in question here should be certified pursuant to Rule 23(b)(1) and/or (b)(3).  *See* Plaintiff's Brief at 13-21.

On the other hand, the County contends that certification under Rule 23(b)(1) is not appropriate, because even if the first inquiry is whether a strip search pursuant to a blanket policy is constitutional, adjudication of the claims of individual class members will not be dispositive of the claims of any other class members, eliminating the risk of inconsistent adjudications. This is so, the County argues, because each claim will depend upon its individual facts, including whether officers could search each arrestee based on reasonable suspicion.

### b.    Analysis

Rule 23(b)(1)(A) "covers cases in which separate actions by or against individual class members would risk establishing 'incompatible standards of conduct for the party opposing the class.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Rule 23(b)(1)(A)). As the Supreme Court has explained, "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'" *Id.* (quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 388 (1967) (Kaplan, *Continuing Work*)). As a colleague in the Western District of Missouri cogently observed, "Subsection A attempts to avoid possible prejudice to [the defendant], while subsection B is concerned with prejudice to the putative class members." *Tussey v. ABB, Inc.*, 2007 WL 4289694, *8 (W.D. Mo. Dec. 3, 2007) (slip op.). "A widely-recognized limitation on (b)(1)(A) certification requires that there be 'more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.'" *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1263-64 (10th Cir. 2004) (quoting *National*

25

*Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681, 687 (D. Kan. 1994), and also citing HERBERT B. NEWBERG & ALBA CONTE, 2 NEWBERG ON CLASS ACTIONS § 4:4 (4th ed. 2002)).

The court finds that Rattray's "same treatment" argument in support of certification pursuant to Rule 23(b)(1)(A) does little more than substitute the general description of the kinds of cases that this provision of the Rule was designed to "take in," as described in *Amchem Products*, 521 U.S. at 613, for the specific requirements of the Rule. Rule 23(b)(1)(A) does not provide for certification of a class in which the defendant is required to give the putative class members the same treatment; it provides for certification of a class in which "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23(b)(1)(A). By conceding that there is really little risk of inconsistent liability judgments among the class members, if their claims are brought separately, Rattray has essentially conceded that she cannot meet the requirements for certification of a class pursuant to Rule 23(b)(1)(A). *Cf. In re Integra Realty Resources, Inc.*, 354 F.3d at 1263-64 (requiring "[m]ore than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.") (internal quotation marks and citations omitted). In light of the nature of the putative class members' claims that a blanket strip search policy is unconstitutional, the court finds little risk that the County would be subjected to incompatible standards of conduct as a result of inconsistent adjudications with respect to individual class members. FED. R. CIV. P. 23(b)(1)(A). Therefore, the court concludes that certification pursuant to Rule 23(b)(1) is not appropriate.

## 2. Certification pursuant to Rule 23(b)(3)

### a. Arguments of the parties

Rattray also argues that certification is appropriate under Rule 23(b)(3), because common questions of law and fact predominate, even if they are not fully dispositive of the litigation, and a class action is superior to other methods for adjudicating the present controversy. She argues that the record is clear that the County strip searched all persons arrested on a serious misdemeanor charge pursuant to a blanket policy and did not even address whether individualized reasonable suspicion existed for each strip search. She argues that requiring the plaintiffs to prove that each individual search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Rattray also argues that a class action is superior to other actions, as required by Rule 23(b)(3), because of the potential size of the class and the nature of the injuries alleged by the class members, and because the claims of the class revolve around the same course of conduct by the County. More specifically, she argues that a class action is superior, because it will vindicate the rights of a group of people who individually would not have effective strength to bring their opponent into court at all, where their claims are for humiliation, not for physical injuries that might more readily impress a jury. She argues that certification pursuant to Rule 23(b)(3) is also appropriate, because of the desirability of concentrating the litigation in this forum, as the situs of the alleged misconduct, and because litigation in this forum does not present any knotty questions of class administration. For example, she contends that notice could be mailed to persons who can be identified with reasonable certainty and that liability and damages portions of the proceedings could be bifurcated, if appropriate.

The County argues that certification under Rule 23(b)(3) is not appropriate, because the proposed class lacks common dispositive issues, where the existence of reasonable suspicion requires individualized analysis, which undermines both the "predominance" and

27

"superiority" requirements. The County also argues that it has not failed to act on grounds generally applicable to the proposed class, because the County has withdrawn its blanket strip-search policy.

### b. Analysis

Rule 23(b)(3) provides for certification of a class when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Supreme Court has explained that this provision is "[f]ramed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations." *Amchem Prods., Inc.*, 521 U.S. at 615. Thus, Rule 23(b)(3) "permits certification where class suit 'may nevertheless be convenient and desirable.'" *Id.* (quoting Rule 23(b), Advisory Committee Notes, 28 U.S.C.App., p. 697).

More specifically,

> To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." In adding "predominance" and "superiority" to the qualification-for-certification list, the Advisory Committee sought to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Ibid.* Sensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other, the Reporter for the 1966 amendments cautioned:

> "The new provision invites a close look at the case before it is accepted as a class action. . . ." Kaplan, *Continuing Work* 390.

*Amchem Prods., Inc.*, 521 U.S. at 615.

"Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria." *Id.* at 615-16. Those factors, found in Rule 23(b)(3)(A) through (D), are quoted above, beginning on page 22. As the Supreme Court explained,

> In setting out these factors, the Advisory Committee for the 1966 reform anticipated that in each case, courts would "consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit." Adv. Comm. Notes, 28 U.S.C.App., p. 698.

*Amchem Prods., Inc.*, 521 U.S. at 616.

*i.* ***Predominance***. As to the "predominance" requirement for certification pursuant to Rule 23(b)(3), the Eighth Circuit Court of Appeals has observed as follows:

> The requirement of Rule 23(b)(3) that common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. *See In re Visa,* 280 F.3d at 136-40. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. *See id.*
> To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings. *See General Tel. Co. of Southwest v.*

> *Falcon,* 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d
> 740 (1982). In conducting this preliminary inquiry, however,
> the court must look only so far as to determine whether, given
> the factual setting of the case, if the plaintiffs general
> allegations are true, common evidence could suffice to make
> out a prima facie case for the class. *Cf. Eisen v. Carlisle &*
> *Jacquelin,* 417 U.S. 156, 177-78, 94 S. Ct. 2140, 40 L. Ed.
> 2d 732 (1974). *See also In re Visa,* 280 F.3d at 134-35.
> When the decision on class certification comes before full
> merits discovery has been completed, the court must
> necessarily conduct this preliminary inquiry prospectively. A
> decision to certify or not to certify a class may therefore
> require revisiting upon completion of full discovery.
>
> The preliminary inquiry at the class certification stage
> may require the court to resolve disputes going to the factual
> setting of the case, and such disputes may overlap the merits
> of the case. *See Szabo v. Bridgeport Machs., Inc.,* 249 F.3d
> 672, 676-77 (7th Cir. 2001). *See also Newton v. Merrill*
> *Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166-69
> (3d Cir. 2001). Nonetheless, such disputes may be resolved
> only insofar as resolution is necessary to determine the nature
> of the evidence that would be sufficient, if the plaintiff's
> general allegations were true, to make out a prima facie case
> for the class. The closer any dispute at the class certification
> stage comes to the heart of the claim, the more cautious the
> court should be in ensuring that it must be resolved in order to
> determine the nature of the evidence the plaintiff would
> require. *Cf. Eisen,* 417 U.S. at 177-78, 94 S. Ct. 2140.

*Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005).

The court finds that all of the members of the putative class can make a *prima facie* showing that a blanket strip-search policy existed and was unconstitutional, based on the same evidence: That the County had a blanket strip-search policy. Thus, there are common questions concerning the existence of a blanket policy and the constitutionality of strip searches pursuant to that blanket policy. *Id.* Whether those questions

30

predominate, however, is less clear. *See id.* (the class must not only have common questions, but the common questions must predominate for certification pursuant to Rule 23(b)(3)). This is so, in light of the County's contention that the reality is that the merits of each individual's claim will turn on individual facts and, more specifically still, on whether the officers had reasonable suspicion that the arrestee in question was concealing contraband, based, for example, on the charges against each arrestee or the nature of each arrestee's behavior at the time of arrest or booking. The irony of the County's contention that the court must assess whether or not there was reasonable suspicion to search each potential class member to determine liability and damages, when the County admits that it conducted no such individualized determinations at the time each potential class member was strip searched, is not lost on the court. Nevertheless, the County's argument requires careful consideration.

Looking behind the pleadings, the common question of whether the potential class members were subjected to strip searches pursuant to an unconstitutional policy or practice does not predominate, because even if the named plaintiff's general allegations are true, common evidence will not suffice to make out a *prima facie* case of unconstitutional searches for the class members. *Id.* The court so holds, even recognizing that, in recent decisions, most of which were not cited by the plaintiff, other courts have uniformly certified Rule 23(b)(3) classes in strip-search cases over objections like those that the County raises here. *See, e.g., In re Nassau County Strip Search Cases*, 461 F.3d 219, 229-30 (2d Cir. 2006) (holding individual issues did not predominate for a class defined as persons strip searched pursuant to a blanket policy, where the class definition avoided questions of probable cause and focused, instead, on whether the blanket policy existed and whether the defendants were liable for implementing it, and a finding that the existence of a defense based upon reasonable and contemporaneously held suspicion did not foreclose

31

class certification, because any reasonable suspicion inquiries would be de minimis and sought as to only a limited number of plaintiffs); *Eddleman*, 96 F.3d at 1448 (class questions predominated over the questions of the reasonableness of any individual search, where the plaintiffs alleged that they were strip searched pursuant to a blanket policy); *Bame v. Dillard*, 2008 WL 2168393, *8 (D.D.C. May 22, 2008) (common questions predominated over an assertion that individualized considerations of reasonable suspicion were required, at least as to liability, because individual questions concerning damages do not cause individual issues to predominate over common issues on liability and causation); *Johnson v. District of Columbia*, 248 F.R.D. 46, 57 (D.D.C. Feb. 8, 2008) (same); *Moyle v. County of Contra Costa*, 2007 WL 4287315, *22 (N.D. Cal. Dec. 5, 2007) (the core issue of whether policies and practices relating to strip searches were lawful predominated over the defendants' contention that individualized determinations would have to be made regarding the existence of facts that would give rise to reasonable suspicion); *Engeseth v. County of Isanti*, 2007 WL 3102074, *8 (D. Minn. Oct. 23, 2007) (the question of the constitutionality of certain aspects of the county's strip-search policy predominated as the "central issue" in the case, over the defendants' assertion that the search of the named plaintiff was not unreasonable under the circumstances); *Mitchell v. County of Clinton*, 2007 WL 1988716, *4 (N.D.N.Y. July 5, 2007) (issues of whether blanket strip-search policies or practices existed, whether they were constitutional, and whether the defendants were liable predominated over questions subject to individualized proof, and the predominance of common issues was heightened by dividing the class into two subclasses); *Young v. County of Cook*, 2007 WL 1238920, *7 (N.D. Ill. April 25, 2007) ("When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation," even over the defendants' contention that the reasonableness of strip searches required case-by-case determination); *Barnes v.*

Case 5:07-cv-04014-MWB   Document 69   Filed 09/02/08   Page 32 of 41

*District of Columbia*, 242 F.R.D. 113, 123 (D.D.C. 2007) (questions of the constitutionality of a strip-search policy "dwarfed" whatever unique issues applicable to individual members might arise at the damages stage); *Kelsey v. County of Schoharie*, 2007 WL 603406, *12 (N.D.N.Y. Feb. 21, 2007) (questions about whether a strip-search policy and practices existed were common to the class members and the existence of defenses in connection with individual plaintiffs, such as the conduct of a strip search based on contemporaneously held suspicion, did not foreclose certification, because such an inquiry would only be sought against a limited number of plaintiffs); *Sutton v. Hopkins County, Ky.*, 2007 WL 119892, *6 (W.D. Ky. Jan. 11, 2007) (holding that when the plaintiffs challenge a uniformly applied policy, the validity of that policy predominates over individual issues); *Dodge*, 226 F.R.D. at 181-82 (holding that, when a uniformly applied policy is challenged, the validity of the policy predominates over individual liability issues, and whether an individual could have been lawfully strip searched, if the required constitutional assessment had been made, is a defense only to a particular class member's damages claim, not a defense to the class-wide claim); *Calvin*, 2004 WL 1125922 at *4 (individual questions predominated over a contention that individualized inquiries had to be made into whether there was reasonable suspicion as to each class member, because the blanket strip-search policy meant that individual reasonable suspicion or probable cause inquiries never took place); *Mack*, 191 F.R.D. at 24 ("To require Plaintiff to prove that each individual [strip] search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Given that these women were routinely strip-searched, the burden rests on Defendants to demonstrate that particular searches were reasonable."); *but see Smith v. Dearborn County, Ind.*, 244 F.R.D. 512, 519-20 (S.D. Ind. 2007) (pretrial detainee records included whether each individual had been charged with other previous crimes, the nature of the individual's current charges, and many included addenda with an

33

actual report that addressed other avenues to support the strip search such as the individual's behavior or appearance at the time or the individual's past behavior, which was all of the information necessary for the court to determine if a strip search was supported by specific, articulable, individualized reasonable suspicion, and if the record contained none of the traditional evidence that the Seventh Circuit Court of Appeals had found supports reasonable suspicion, then that individual would be added to the class).

This court reaches a different conclusion, notwithstanding these decisions. The court notes, first, that there is a disturbing lack of analysis of the extent to which any common question predominates over individual issues in the cases cited above, when the "predominance" requirement of Rule 23(b)(3) "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades*, 400 F.3d at 566-67 (quoting *Amchem Prods., Inc.*, 521 U.S. at 623). For example, this court cannot find that simply defining the class as persons strip searched pursuant to a blanket policy avoids the question of reasonable suspicion or probable cause and focuses, instead, on whether the blanket policy existed and whether the defendants were liable for implementing it, as the Second Circuit Court of Appeals held in *In re Nassau County Strip Search Cases*, 461 F.3d at 229-30. Rather, defining the class as only persons strip searched pursuant to a blanket policy simply begs the question of whether any potential class member—which, in this case, is anyone charged with a serious misdemeanor within the timeframe alleged—was actually strip searched pursuant to the blanket policy or pursuant to reasonable suspicion. In other words, such a class definition actually does nothing to identify which persons properly belong in the class; thus, the question of which potential class members are proper members of the class would promptly become the predominant question, requiring individualized determination. Nor is it realistic to assume that the court can review available information, including records of an arrestee's prior crimes,

34

current charges, or actual reports supporting a strip search, such as reports on the arrestee's behavior or appearance at the time or the individual's past behavior, where there is no showing that the present record contains any such information. *Compare Smith*, 244 F.R.D. at 519-20 (finding such information in the record from which a reasonable suspicion determination, and hence class membership, could be made). Even if the present record did contain such information, the individualized review of records pertaining to what could be over 1,750 individuals to determine class membership for each potential member would promptly become the "predominant" question in the case, dwarfing every other issue.

The court is also unwilling to accept that, simply because a class challenges a uniform practice or policy, the existence, validity, or legality of the policy or practice becomes the predominant issue, even over the defendants' contention that the reasonableness of each strip search requires case-by-case determination. *Contra Eddleman*, 96 F.3d at 1448; *Moyle*, 2007 WL 4287315 at *22; *Engseth*, 2007 WL 3102074 at *8; *Young*, 2007 WL 1238920 at *7; *Barnes*, 242 F.R.D. at 123; *Kelsey*, 2007 WL 603406 at *12; *Sutton*, 2007 WL 119892 at *6; *Dodge*, 226 F.R.D. at 181-82. Undoubtedly the existence, validity, and legality of such a policy or practice are pertinent questions, but these questions may not have to be answered at all as to a particular potential class member, if that potential class member either cannot establish liability or damages for a strip search pursuant to a blanket policy, because the potential class member cannot show that his or her search was not justified by reasonable suspicion.

Moreover, notwithstanding the court's conclusion, above, that the question is common to the class members, the court finds that whether reasonable suspicion to strip search an individual that was apparent from the circumstances of that individual at the time of that individual's strip search bars liability or damages on that individual's claim that he

35

or she was strip searched pursuant to an unconstitutional blanket policy is an unsettled question. *Compare Bame*, 2008 WL 2168393 at *8 (suggesting that the existence of individualized considerations of reasonable suspicion goes to damages); *Dodge*, 226 F.R.D. at 181-82 (such evidence raises a defense only to a particular class member's damages claim, not a defense to a class-wide liability claim), *with In re Nassau County Strip Search Cases*, 461 F.3d at 229-30 (defining the class as persons strip searched pursuant to a blanket policy implicitly avoided liability questions); *Eddleman*, 96 F.3d 1448, 1996 WL 495013 at *3-*4 (finding that "some individuals may fail to meet the qualifications for the class because it can be shown that there was reasonable suspicion to search them," suggesting that the issue is one of liability); *Mack*, 191 F.R.D. at 23 (suggesting that whether a claimant was strip searched pursuant to reasonable suspicion rather than a blanket policy was a defense going to liability). This court deems it is inappropriate to answer that unsettled question now, at the class certification stage of the proceedings, because the question is a legal one that is potentially dispositive of at least part of the claims of many class members and, thus, is likely to draw the court deep into the merits of the litigation, *Blades*, 400 F.3d at 566-67 (the court may take only a limited preliminary inquiry beyond the pleadings and into the merits of the claims for class certification purposes), and the question has not been fully briefed. Nor is that question the predominant question, in any event, because answering it will not determine whether the class is entitled to or barred from relief, but only whether some individuals are barred from relief. *See id.* (to be the predominant question, the question must establish that, if the plaintiffs' general allegations are true, common evidence could suffice to make out a *prima facie* case for the class). This court also cannot accept as readily as other courts have been willing to do that the inquiries into whether the facts in individual cases demonstrate reasonable suspicion supporting a strip search in those cases would be *de*

36

*minimis* or would only arise as to a relatively small number of potential plaintiffs, *contra id.*; *Kelsey*, 2007 WL 603406 at *12, where that question is potentially dispositive of each class member's liability or damages claim.

This court does not believe that the questions of the existence and constitutionality of a blanket strip-search policy realistically establish that the class is sufficiently cohesive to warrant adjudication by representation, where other individualized questions actually or realistically predominate. *Blades*, 400 F.3d at 566-67. Therefore, because individual questions predominate, the court finds that the "predominance" requirement for certification pursuant to Rule 23(b)(3) is not met here.

**ii.** ***Superiority of the class action***. A further requirement of Rule 23(b)(3) is that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc.*, 521 U.S. at 615 (second requirement for certification pursuant to Rule 23(b)(3)). The court finds that this requirement is not met here, even though the court recognizes the possibility that a class can be certified pursuant to Rule 23(b)(3) on only certain issues, such as liability, even if the action as a whole does not satisfy Rule 23(b)(3)'s "predominance" requirement, *see In re Nassau County Strip Search Cases*, 461 F.3d at 225-27; that subclasses could be defined, *see Mitchell*, 2007 WL 1988716 at*4; and that the County's concession that a blanket strip-search policy existed in this case does not eliminate the existence of the policy from the "predominance" analysis, *see In re Nassau County Strip Search Cases*, 461 F.3d at 227-29. In this case, the court finds that the individual issues that would have to be decided to determine either the membership of individuals in a single class or the proper definition of any subclasses and the general predominance of individual issues suggest that a class action is not superior to other available methods for adjudication of the controversy. *Amchem Prods., Inc.*, 521 U.S. at 615.

More specifically, it is with regard to the "superiority" requirement that the factors enumerated in Rule 23(b)(3) appear to be most instructive.  Those factors, again, are the following:  "**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions; **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members; **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and **(D)** the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3).  These factors do not warrant certification of the class here.

The dispositive consideration here is the class members' interest in individual control. FED. R. CIV. P. 23(b)(3)(A).  This case presents an example of an action in which the class simply does not have a high degree of cohesion, even if the amounts at stake for individuals may be so small (based on damages for humiliation, not physical injury) that litigation in separate suits would seem impracticable.  The individualized determinations necessary to decide whether any individual would even belong in the class or could establish liability or damages demonstrate that individuals have a strong interest in controlling the prosecution of separate actions. *Amchem Prods., Inc.*, 521 U.S. at 616 (quoting Advisory Committee Notes, 28 U.S. C.App. p. 698).  While it is true that only three lawsuits—all now consolidated—have been instituted based upon essentially the same claim, so that the extent and nature of the litigation already begun by class members would not, standing alone, warrant allowing individual suits to carry the question forward, *see* FED. R. CIV. P. 23(b)(3)(B), even the claims of those three plaintiffs involve highly individualized issues, as shown above.

Similarly, while it would be desirable to concentrate the litigation in this forum, FED. R. CIV. P. 23(b)(3)(C), where this forum is the situs of the conduct at issue, the problems with management of this action as a class action become substantial. *See* FED.

R. CIV. P. 23(b)(3)(D). Although, as Rattray argues, notice to the potential class members does not involve undue complexity, class litigation presents the nightmarish scenario of myriad individualized determinations to decide which potential class members actually belong to the class and which can potentially prove liability and/or damages. Thus, while the logistics of a multiplicity of similar actions is daunting, the logistics of attempting to create a class action out of what are, in reality, a myriad of individualized claims is even more daunting. In short, the court finds that it is unlikely that the proposed class action here would achieve economies of time, effort, and expense. *Amchem Prods., Inc.*, 521 U.S. at 615 (finding that these are concerns served by the "predominance" and "superiority" requirements for a Rule 23(b)(3) class action).

Therefore, the court concludes that this action should not be conditionally certified as a class action pursuant to Rule 23(b)(3).[8]

## D. Appealability

As the Eighth Circuit Court of Appeals has recognized, "Orders granting or denying certification of a class are interlocutory, not final." *P.A.C.E. v. School Dist. of Kansas City*, 312 F.3d 341, 342-43 (8th Cir. 2002) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 464-65 (1978)). Nevertheless, "a Court of Appeals may exercise its discretion to review class certification orders, if application is made to it within ten days of entry of the order" pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. *Id.* at 343. More specifically, Rule 23(f) provides as follows:

_____

[8]Because the court will deny the motion for class certification for failure to satisfy the Rule 23 requirements, the court will not reach the parties' dispute concerning the proper definition of the class.

> **(f) Appeals.** A court of appeals may permit an appeal
> from an order granting or denying class-action certification
> under this rule if a petition for permission to appeal is filed
> with the circuit clerk within 10 days after the order is entered.
> An appeal does not stay proceedings in the district court unless
> the district judge or the court of appeals so orders.

FED. R. CIV. P. 23(f); *see also P.A.C.E.*, 312 F.3d at 343 (citing *In re: Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98, 102-06 (D.C. Cir. 2002); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 292-95 (1st Cir. 2000); and *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834-35 (7th Cir. 1999), as discussing when denial of a motion for class certification is appropriate for interlocutory review). The court encourages the disappointed plaintiff here to pursue an interlocutory appeal in this case, because the court recognizes that its decision is against the weight of authority granting class certification in strip-search cases.

## III. CONCLUSION

The court is not convinced that representative plaintiff Rattray has satisfied all of the Rule 23(a) prerequisites for class certification, but assuming that she has done so, the court finds that she has failed to satisfy the specific requirements for certification of a class pursuant to either Rule 23(b)(1) or 23(b)(3). Certification of a class pursuant to Rule 23(b)(1) is not appropriate, because the court finds little risk that the County would be subjected to incompatible standards of conduct as a result of inconsistent adjudications with respect to individual class members, in light of the nature of the putative class members' claims that a blanket strip search policy is unconstitutional. FED. R. CIV. P. 23(b)(1)(A). Certification of a class pursuant to Rule 23(b)(3) also is not appropriate, because, in this court's view, class questions do not predominate over individual questions, and, for

40

essentially that same reason, a class action is not superior to other methods of adjudicating the controversy.

THEREFORE, plaintiff Rattray's April 28, 2008, Motion To Certify Class (docket no. 44) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 2nd day of September, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA