**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| MAUREEN RATTRAY, LISA LAMBERT, and LORI MATHES,<br><br>Plaintiffs,<br><br>vs.<br><br>WOODBURY COUNTY, IOWA, GLENN J. PARRETT, individually and as Sheriff of Woodbury County, and ROBERT E. ASPLEAF, individually and as Assistant Chief/Deputy Sheriff of Woodbury County,<br><br>Defendants. | No. C07-4014-MWB<br><br>(No. C08-4008-MWB)<br>(No. C07-4032-MWB)<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . 4
    *B. Constitutionality Of The Former Policy And Conduct Pursuant To It* . . . 6
        *1. Withdrawal of the claims* . . . . . . . . . . . . . . . . . . . . . . 6
        *2. Issues unnecessary to resolution of remaining claims* . . . . . . 7
        *3. Unnecessary determination of constitutional issues* . . . . . . . 8
        *4. Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *C. Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        *1. Clearly established right* . . . . . . . . . . . . . . . . . . . . . 9
        *2. Violation of the right* . . . . . . . . . . . . . . . . . . . . . . 10
            *a. Plaintiff Rattray* . . . . . . . . . . . . . . . . . . . . . 11
            *b. Plaintiffs Mathes and Lambert* . . . . . . . . . . . . . . 13
    *D. Severance Of Trials* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

The plaintiffs in these consolidated cases each assert claims that their rights under the Fourth Amendment to the United States Constitution were violated when they were subjected to strip searches and visual body cavity searches following their arrests on serious misdemeanor charges pursuant to a "blanket" policy of the defendants authorizing strip searches of all arrestees facing serious misdemeanor or more serious charges. This matter is before the court on the plaintiffs' October 1, 2010, Motion For Partial Summary Judgment (docket no. 93).

## I. INTRODUCTION

Relatively little factual background is necessary to put in context the parties' arguments concerning partial summary judgment. Plaintiff Maureen Rattray was arrested by a Sioux City Police Officer on or about August 16, 2006, for a violation of IOWA CODE § 321J.2, that is, a first offense of operating a motor vehicle while intoxicated (OWI). The offense for which Rattray was arrested is a serious misdemeanor under Iowa law. Plaintiff Lisa Lambert was arrested on or about March 17, 2007, and charged with domestic simple assault. Lambert contends that the charge was reclassified by defendant Woodbury County as a serious misdemeanor of domestic abuse, but the defendants deny that the charge against Lambert was "reclassified" as a serious misdemeanor. Plaintiff Lori Mathes was arrested on or about May 7, 2007, for possession of marijuana, a serious misdemeanor under Iowa law.

The parties agree that each of the plaintiffs was transported to the Woodbury County Jail, where, as part of the booking procedure, she was strip searched. The plaintiffs

contend that they were also subjected to visual body cavity (VBC) searches, but the defendants contend that they were subjected only to visual inspections of their bodies, not cavity searches.[1] The defendants admit that the strip searches were conducted without first conducting a reasonable suspicion analysis as to whether the plaintiff in question was concealing drugs, weapons, or other contraband. The defendants also admit that the strip searches were conducted pursuant to a policy that provided for such searches of every arrestee charged with crimes that are serious misdemeanors or above. The defendants admit, further, that the policy pursuant to which the plaintiffs were searched was implemented in the early 1980s (although they deny that it was implemented as early as the 1970s, as the plaintiffs allege). The defendants admit that each search revealed no contraband, but deny that the officers conducting each search had no suspicion that the plaintiff in question was concealing contraband prior to conducting the search. The parties agree that the policy of strip searching all arrestees charged with serious misdemeanors or above was discontinued on October 15, 2007. The policy of the Woodbury County Sheriff's Department (the Department) now requires reasonable suspicion to justify a strip search or visual body cavity inspection and lists a number of factors that may be relevant to the determination of reasonable suspicion, including the nature of the charge against the arrestee.

---

[1] Whether or not any plaintiff was subjected to a "visual body cavity" or VBC search as well as a strip search is a red herring. The defendants' expert, Mr. Collins, states that "a strip search" is "sometimes referred to as a 'visual body cavity search,'" Defendants' Appendix at 20, and the defendants have cited no definition of a "visual body cavity search" that distinguishes it from a "strip search." Moreover, the portions of the record that they cite in support of their denial that the plaintiffs were subjected to "visual body cavity searches" show only that there was no physical search of any body cavities, but that there were or could be visual inspections of certain body cavities pursuant to a "strip search."

The plaintiffs here seek summary judgment in their favor as follows: (1) that the defendants' strip search policy was facially unconstitutional; (2) that the individual defendants, the sheriff and assistant chief deputy sheriff, are not entitled to qualified immunity in this case; (3) that the defendants conducted the strip searches in question pursuant to the defendant county's unconstitutional "blanket" strip search policy and, therefore, have the burden to establish *post hoc* reasonable suspicion for each search to avoid liability; and (4) that the defendants have failed to generate genuine issues of material fact concerning reasonable suspicion, even *post hoc*, to support the strip searches of the plaintiffs. The defendants contend that they have generated genuine issues of material fact on each of these issues, so that the plaintiffs are not entitled to summary judgment on any of them.

## II. LEGAL ANALYSIS
### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id*. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to

4

judgment as a matter of law.").[2] The moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

---

[2]A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

### B. *Constitutionality Of The Former Policy And Conduct Pursuant To It*

The court finds it unnecessary to consider at this time either the first question or the third question on which the plaintiffs seek summary judgment, that is, whether the defendants' former strip search policy was facially unconstitutional, and whether the defendants conducted the strip searches in question pursuant to that unconstitutional policy. This is so for at least three reasons.

#### 1. *Withdrawal of the claims*

As to the first question, it is true that, "in general, a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *Charleston Housing Auth. v. United States Dep't of Agriculture*, 419 F.3d 729, 740 (8th Cir. 2005); *accord Lowery ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 761 n.8 (8th Cir. 2008) (citing *Charleston Housing Authority* for the proposition that a defendant's voluntary change of a potentially unconstitutional policy "did not moot the issue"). However, here, the plaintiffs' most recent Complaint includes no prayer for declaratory judgment that the Department's former policy was unconstitutional. The plaintiffs did not include any claim or prayer for declaratory judgment in their original Complaint And Jury Demand (docket no. 2), then added a specific count for declaratory and injunctive relief in their First Amended Complaint And Jury Demand To Allege Class Claims (docket no. 24), seeking an order requiring the County to end strip searches of detainees arrested for a serious misdemeanor without individualized reasonable suspicion as required by law, then inexplicably dropped that count and any prayer for declaratory judgment from their Amended And Consolidated Class Action Complaint (docket no. 66). Their withdrawal of their claim for declaratory judgment is all the more perplexing, where they devoted a substantial portion of their summary judgment briefing to an issue that they

6

did not plead in their latest Complaint. Nevertheless, they mooted the issue by withdrawing the very claim for declaratory judgment on which they now demand summary judgment. *See Jenkins by Jenkins v. State of Missouri*, 158 F.3d 980, 983 (8th Cir. 1998) (an award of attorneys fees was mooted, when the class withdrew its claim).

### 2. *Issues unnecessary to resolution of remaining claims*

In the alternative, as to the first issue, a determination that the former policy was facially unconstitutional would neither entitle the plaintiffs to any relief, standing alone, nor establish a prerequisite to any other relief that the plaintiffs seek, because, as explained below, it is not pertinent to the determination of whether or not the individual defendants are entitled to qualified immunity. Similarly, a determination that the defendants strip searched the plaintiffs pursuant to the policy, the third issue on which the plaintiffs seek summary judgment, would not, standing alone, entitle the plaintiffs to any relief, because even if the strip searches were pursuant to the policy, the plaintiffs would not be entitled to any relief, if the defendants show, *post hoc*, that they would have had reasonable suspicion to conduct the strip searches in question. *See In Re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (a defendant may have a defense based on its claims that certain strip searches could have been supported by reasonable suspicion, despite a blanket policy). Thus, any determination of those issues might be mere *dicta*, *see Cherichel v. Holder*, 591 F.3d 1002, 1015 (8th Cir. 2010) (discussion of matters unnecessary to the resolution of the case is *dicta*), and is, at the very least, unwise. *See United States v. Norris*, 486 F.3d 1045, 1055 (8th Cir. 2007) (Colloton, J., concurring in the judgment) (courts should refrain from pronouncements on issues that are unnecessary to resolution of the case); *In re Geiger*, 113 F.3d 848, 853 (8th Cir. 1997) (expressing no view on a matter that was unnecessary to the resolution of the case).

7

### 3. *Unnecessary determination of constitutional issues*

Finally, it is appropriate for the court to avoid unnecessarily deciding constitutional issues, such as whether the former policy violated the Fourth Amendment and whether the defendants acted pursuant to an unconstitutional policy, where those issues do not need to be resolved to determine the rights of the parties. *See White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007); *United States v. Turechek*, 138 F.3d 1226, 1229 (8th Cir. 1998) ("While federal courts are obliged to decide constitutional questions when necessary to the resolution of a dispute before them, 'they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.'" (quoting *County Court v. Allen*, 442 U.S. 140, 154 (1979)).

### 4. *Summary*

Therefore, the court will deny—as moot, as unnecessary to the resolution of the case, and as an unnecessary determination of constitutional questions—the plaintiffs' request for summary judgment on the first and third questions that they present, whether or not the defendants' former strip search policy was facially unconstitutional, and whether or not the strip searches at issue were conducted pursuant to the allegedly unconstitutional policy.

## C. *Qualified Immunity*

The first issue presented in the plaintiffs' Motion For Partial Summary Judgment that the court finds it must resolve is whether the sheriff and assistant chief deputy sheriff are entitled to qualified immunity in this case. "To determine whether an officer is entitled to qualified immunity, we ask first whether the officer's conduct violated a constitutional right, and second whether that right was clearly established at the time of the deprivation

8

'in light of the specific context of the case.'" *Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1006 (8th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In this case, however, it makes better sense to ask, first, whether the asserted right was clearly established, then ask whether or not the officers' conduct violated that clearly established right. The parties assert that, here, the pertinent questions are whether the Department's former strip search policy violated a misdemeanor arrestee's Fourth Amendment rights and whether the officers acted pursuant to that policy in searching these plaintiffs. In the court's view, however, these are the wrong questions, because the constitutionality of the former strip search policy is not determinative of whether the plaintiffs are entitled to any relief: The plaintiffs acknowledge that the defendants may escape liability, regardless of the policy in use at the time, if they establish *post hoc* reasonable suspicion for the strip searches. Thus, the proper questions for purposes of determining qualified immunity in this case are whether it was clearly established that a misdemeanor arrestee has a constitutional right under the Fourth Amendment not to be strip searched in the absence of reasonable suspicion and whether the officers conducted the strip searches of these arrestees without reasonable suspicion, thus violating their constitutional rights.

### 1. *Clearly established right*

The court finds that, as a matter of law, at the time of the strip searches at issue here, it was clearly established that a strip search without reasonable suspicion violates a misdemeanor arrestee's constitutional rights. *See Jones v. Edwards*, 770 F.2d 739, 741-42 (8th Cir. 1985) (finding a strip search of an arrestee violated the Fourth Amendment where authorities had no reasonable suspicion of concealed weapons or contraband); *see also Smook v. Minnehaha County*, 457 F.3d 806, 813 (8th Cir. 2006) ("Our court, like many others, had concluded that a strip search of adult offenders without individualized suspicion

was unreasonable, but those cases did not consider the different interests involved when the State has responsibility to act *in loco parentis* [as to juvenile offenders]."). The only authority to the contrary offered by the defendants is *Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2008), but that decision is both not controlling, because it is out-of-circuit, and after the fact, as it was handed down after the Department had already changed its policy to require reasonable suspicion for strip searches, so it could not have caused any confusion about the constitutionality of the defendants' conduct. Thus, the plaintiffs are entitled to summary judgment on one prong of the qualified immunity analysis, that is, that it was clearly established at the time of the strip searches in question that a strip search without reasonable suspicion violates a misdemeanor arrestee's rights under the Fourth Amendment to the United States Constitution.

### 2. *Violation of the right*

Turning to the question of whether the searches did, in fact, violate the plaintiffs' constitutional rights, the other prong of the qualified immunity analysis, *see Richmond*, 490 F.3d at 1006 (to defeat qualified immunity, the plaintiff must show that the alleged constitutional right was clearly established at the time and that the officer's conduct violated that right), the proper question is whether the defendants have generated a genuine issue of material fact that the strip searches of these defendants could be justified, *post hoc*, by reasonable suspicion. *See In Re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (a defendant may have a defense based on its claims that certain strip searches could have been supported by reasonable suspicion, despite a blanket policy). As the Eighth Circuit Court of Appeals has explained,

> The reasonable suspicion standard requires officials to base strip searches on specific objective facts and rational inferences they are entitled to draw from those facts in light of their experience. It requires individualized suspicion specifically

10

> directed to the person who is targeted for the strip search.
>
> *Hunter v. Auger*, 672 F.2d [668,] 674-75 [(8th Cir. 1982)].

*McDonell v. Hunter*, 809 F.2d 1302, 1307 (8th Cir. 1987). The plaintiffs assert that this standard means that reasonable suspicion cannot be based on the nature of the charge against the arrestee, standing alone, citing *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997), and *Campbell v Miller*, 499 F.3d 711, 718 (7th Cir. 2007). The plaintiffs have not cited, and this court has not found, any prohibition by the Eighth Circuit Court of Appeals on determining reasonable suspicion based on the nature of the charges against an arrestee. Indeed, the nature of the specific charges against an individual arrestee might well inform the rational inferences that officers might be entitled to draw from the facts in light of their experience. *McDonell*, 809 F.2d at 1307.[3]

### a. *Plaintiff Rattray*

The court concludes that the defendants have failed to generate any genuine issues of material fact that the strip search of plaintiff Rattray could have been justified, *post hoc*, by reasonable suspicion. The defendants' sole argument is that a review of reports generated by correctional officers in the Woodbury County Jail indicates that persons arrested for OWI, such as plaintiff Rattray, are among those most likely to have contraband on their person. *See* Defendants' Brief at 6. In support of this contention, they cite a portion of the Report of attorney William C. Collins, Defendants' Appendix at 22. The defendants have dramatically overstated the conclusion of Mr. Collins's report. At most, he opines that an OWI arrest is a "predictor of drug possession," Defendants' Appendix at 22, based on his review of jail records showing that, "between 2001 and

---

[3]For example, it would seem *unreasonable* for officers *not* to strip search someone arrested for attempting to smuggle a weapon or bomb onto an airplane, based solely on the nature of the charge.

11

2006, there were at least 20 persons brought to the jail for OWI charges where a search found drugs," and "[i]n six of these searches, the drugs were hidden in places such as bras, underwear, or between a woman's legs (discovered as an officer observed the woman using the toilet)" so that "[t]hese drugs would not have been found during the property and pat searches the jail conducts short of a strip search." Defendants' Appendix at 21. The court has found nothing in Mr. Collins's Report that states or suggests that OWI arrestees are among those most likely to have contraband on their person, where nothing in his report compares OWI arrestees to persons arrested for other offenses. Furthermore, Mr. Collins's Report fails to indicate how many OWI arrestees there were between 2001 and 2006, and a "predictor" of possession of contraband does not necessarily give rise to the necessary individualized, reasonable suspicion that an arrestee possesses contraband.

The more fundamental problem, however, is that the defendants have pointed to no evidence in the record that any of the people responsible for strip searching plaintiff Rattray were aware of the information on which Mr. Collins relied, such that they could have drawn any inference about the likelihood that she possessed other concealed drugs from her arrest for an OWI offense. Thus, the defendants have made no showing, even *post hoc*, that officials responsible for strip searching plaintiff Rattray based (or could have based) the strip search on specific objective facts and rational inferences that they were entitled to draw *from the facts known to them*, in light of their experience, to establish the required individualized, reasonable suspicion specifically directed to plaintiff Rattray. *McDonell*, 809 F.2d at 1307. Although the officers may be entitled to show that they *could have* based a strip search on reasonable suspicion, logically, such reasonable suspicion would have to be based on what the officers *did* know at the time of the strip search, not what they *could have* known, but did not.

12

Therefore, plaintiff Rattray is entitled to summary judgment that the defendants do not have qualified immunity to her claim that her Fourth Amendment rights were violated by her strip search at the time of her arrest. She is also entitled to summary judgment on her claim that the defendants violated her Fourth Amendment right to be free from a strip search in the absence of reasonable suspicion. Thus, the only remaining issue as to plaintiff Rattray's claims pertains to what, if any, damages she is entitled to receive for the violation of her constitutional rights.

### b. *Plaintiffs Mathes and Lambert*

On the other hand, the court concludes that the defendants have generated, just barely, genuine issues of material fact as to whether the searches of plaintiffs Mathes and Lambert *could have been* justified by reasonable suspicion.

The defendants assert that the nature of the charge for which Lori Mathes was arrested, possession of marijuana, is a "strong indicator" of the likelihood that she was concealing contraband. Defendants' Brief at 6-7. The court believes that a reasonable jury could find that an officer who was aware that a person had been arrested for possession of an illegal drug could have a reasonable suspicion that the arrestee was hiding other contraband on his or her person where it could not be found by a patdown search. More important, however, are matters revealed in the records concerning Lori Mathes's arrest. Specifically, the Iowa Incident Report Supplemental concerning Mathes's arrest on May 7, 2007, Plaintiffs' Appendix at 123, shows that Mathes and another person were arrested after a vehicle stop in which methamphetamine and marijuana were found, and the other person in the vehicle was arrested for possession of methamphetamine, while she was arrested for possession of marijuana. A reasonable jury could find that an officer would have reasonable suspicion for a strip search, specific to Mathes, from knowledge that Mathes was arrested after a vehicle stop, and hence, was arrested in circumstances that

13

presented opportunities to hide contraband before an arresting officer could view the inside of the vehicle, and from knowledge that two different controlled substances were found in the vehicle. Mathes's circumstances are different from those of a defendant arrested on an anonymous tip that he or she had possessed a controlled substance at some time in the past, *cf. Hunter*, 672 F.2d at 675-76 (holding that a strip search based wholly on an anonymous tip that a particular visitor to a prison was attempting to smuggle drugs during a visit with an inmate lacked the necessary reasonable suspicion), because it would be much more reasonable to suspect that, because of Mathes's immediate physical and temporal relationship to the contraband leading to her arrest, she might be in possession of other hidden contraband at the time of her arrest. Thus, even if the nature of a drug possession charge does not *always* give rise to a reasonable suspicion that an arrestee may be in possession of hidden contraband, the circumstances in Mathes's arrest go well beyond the mere nature of the charge as the basis for reasonable suspicion, individualized to Mathes, that she might have other contraband hidden on her person. Indeed, had the defendants moved for cross-summary judgment on Mathes's claim, the court would have been inclined to grant their cross-motion. The court's only reservation on doing so now is that the parties have not had the opportunity to brief the question of whether reasonable suspicion must be based on what the particular officers conducting the search knew, or whether some "collective" knowledge of facts available at the time suffices to establish reasonable suspicion. Thus, before plaintiff Mathes can survive a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure at trial, the court will have to be convinced that the facts, shown at trial, concerning her arrest are somehow not sufficient to establish reasonable suspicion for a strip search.

The defendants also assert that, where Lisa Lambert was arrested on a charge of domestic violence, and a knife was found in her possession at booking, the arresting

14

officers could have had a reasonable suspicion that she possessed other weapons or potential weapons hidden on her person where they could not be found by a patdown search. The court agrees with the defendants that, in the case of Lisa Lambert, a reasonable jury could find that an officer who knew these facts could have an individualized, reasonable suspicion, from matters beyond just the nature of the charge against her, that Ms. Lambert might be concealing other weapons. Thus, these plaintiffs are not entitled to summary judgment on the issue of whether or not the defendants have qualified immunity to their claims and, hence, are not entitled to summary judgment on the liability portion of their claims.

### D. Severance Of Trials

Rule 42 of the Federal Rules of Civil Procedure provides for both consolidation of actions involving a common question of law or fact and separate trials, "[f]or convenience, to avoid prejudice, or to expedite and economize. . . ." FED. R. CIV. P. 42(a) (consolidation) & (b) (separate trials). Where one of the plaintiffs, plaintiff Rattray, must only prove damages, but the other two plaintiffs, plaintiffs Mathes and Lambert, must prove both liability and damages, the court finds it appropriate to sever the trial of plaintiff Rattray's damages claim from the trial of the other plaintiffs' claims. Moreover, the court finds it appropriate to schedule the trial on plaintiff Rattray's damages claim first, in the time frame during which the trial in this case is currently scheduled, and to schedule the trial of the claims of plaintiffs Mathes and Lambert for a later date. The court also concludes that a joint trial of the claims of plaintiffs Mathes and Lambert would be just, efficient, and economical, where there are substantial overlapping legal and factual issues in their claims.

15

### III. CONCLUSION

Upon the foregoing,

1. The plaintiffs' October 1, 2010, Motion For Partial Summary Judgment (docket no. 93) is **granted in part and denied in part**, as follows:

    a. The plaintiffs' motion for summary judgment is **denied** as to whether the Department's former strip search policy was facially unconstitutional and whether the defendants conducted the strip searches in question pursuant to the Department's unconstitutional "blanket" strip search policy;

    b. The plaintiffs' motion for summary judgment is **granted** as to plaintiff Rattray's claim that the defendants are not entitled to qualified immunity and that they did violate her rights under the Fourth Amendment to the United States Constitution by subjecting her to a strip search without reasonable suspicion;

    c. The plaintiffs' motion for summary judgment is **denied** as to the claims of plaintiffs Mathes and Lambert that the defendants are not entitled to qualified immunity and that the defendants violated their constitutional rights by subjecting them to a strip search without reasonable suspicion.

2. The jury trial on plaintiff Rattray's remaining claim for damages as a result of the violation of her constitutional rights is **severed** and **will commence on Tuesday, January 18, 2011.** Because this trial should be considerably shorter than the trial on all plaintiffs' claims for liability and damages, it is no longer necessary to start the trial on Monday, January 17, 2011, which is a holiday.

3. The jury trial on the claims for liability and damages for constitutional violations by plaintiffs Mathes and Lambert is **severed** and **will commence on Monday, March 28, 2011,** the next available trial date in the court's calendar.

**IT IS SO ORDERED.**

**DATED** this 1st day of December, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA