# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MAUREEN RATTRAY, LISA LAMBERT, and LORI MATHES,<br><br>Plaintiffs,<br><br>vs.<br><br>WOODBURY COUNTY, IOWA, GLENN J. PARRETT, individually and as Sheriff of Woodbury County, and ROBERT E. ASPLEAF, individually and as Assistant Chief/Deputy Sheriff of Woodbury County,<br><br>Defendants. | No. C07-4014-MWB<br><br>(No. C08-4008-MWB)<br>(No. C07-4032-MWB)<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' PRETRIAL MOTIONS** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. The Motion To Exclude Evidence From The Defendants' Expert* . . . . . 5
    *B. The Motions In Limine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.   *Witnesses not properly disclosed* . . . . . . . . . . . . . . . . . . 7
        2.   *Unrelated medical treatment* . . . . . . . . . . . . . . . . . . . . . 8
    *C. The Motion For Sanctions* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.   *Factual basis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.   *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 12
        3.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiff Maureen Rattray asserts that her rights under the Fourth Amendment to the United States Constitution were violated when she was subjected to a strip search without reasonable suspicion following her arrest on a serious misdemeanor charge. In a ruling on cross-motions for summary judgment, this court found that plaintiff Rattray had established the defendants' liability as a matter of law and severed the trial on her remaining damages claim from the trial on the claims of two other plaintiffs. Prior to the court's summary judgment ruling, all three plaintiffs moved to strike the defendants' expert, and after that ruling, plaintiff Rattray filed a motion in limine to exclude certain evidence, a motion for sanctions for destruction of part of a video recording of her strip search and subsequent treatment, and a supplemental motion in limine. The defendants have now responded to all four of the plaintiffs' pretrial motions. The court will address these four pretrial motions to the extent that they pertain to the upcoming trial of plaintiff Rattray's damages claim.

## I.  INTRODUCTION

Relatively little factual background is necessary to put in context the parties' arguments concerning the pretrial motions now pending before the court, at least as they pertain to the trial of plaintiff Rattray's damages claim. Plaintiff Rattray was arrested by a Sioux City police officer on or about August 16, 2006, for a violation of IOWA CODE § 321J.2, that is, a first offense of operating a motor vehicle while intoxicated (OWI). The offense for which Rattray was arrested is a serious misdemeanor under Iowa law.

The parties agree that Rattray was transported to the Woodbury County Jail, where, as part of the booking procedure, she was strip searched. The defendants admit that the strip search was performed without first conducting a reasonable suspicion analysis as to whether Rattray was concealing drugs, weapons, or other contraband. The defendants also

2

admit that the strip search was conducted pursuant to a policy that provided for such searches of every arrestee charged with crimes that are serious misdemeanors or above. The parties agree that the policy of strip searching all arrestees charged with serious misdemeanors or above was discontinued on October 15, 2007.[1] The defendants admit that Rattray's strip search revealed no contraband.

In a Memorandum Opinion And Order Regarding Plaintiffs' Motion For Partial Summary Judgment (docket no. 104), filed December 1, 2010, *see Rattray v. Woodbury County, Iowa*, ___ F. Supp. 2d ___, 2010 WL 4959897 (N.D. Iowa Dec. 1, 2010), the court concluded, in pertinent part, as follows: (1) that it was unnecessary to determine whether or not the defendants' former strip search policy was facially unconstitutional, and whether or not the strip searches at issue were conducted pursuant to the allegedly unconstitutional policy; (2) that, as a matter of law, at the time of the strip searches at issue here, it was clearly established that a strip search without reasonable suspicion violates a misdemeanor arrestee's constitutional rights; (3) that Rattray's strip search was conducted without a contemporaneous determination of reasonable suspicion; (4) that the defendants violated Rattray's rights, because they had failed to generate any genuine issues of material fact that the strip search of Rattray could have been justified, *post hoc*, by reasonable suspicion; (5) that the defendants do not have qualified immunity to Rattray's claim of a constitutional violation; and (6) that the defendants violated Rattray's Fourth Amendment right to be free from a strip search in the absence of reasonable suspicion. Thus, the only remaining issues as to plaintiff Rattray's claims pertain to what, if any,

---

[1]The policy of the Woodbury County Sheriff's Department (the Department) now requires reasonable suspicion to justify a strip search and lists a number of factors that may be relevant to the determination of reasonable suspicion, including the nature of the charge against the arrestee.

3

damages she is entitled to receive for the violation of her constitutional rights. Therefore, the court severed Rattray's trial on damages issues to commence on January 18, 2011, and set trial on the other two plaintiffs' claims, which involved both liability and damages issues, for March 28, 2011, the next available trial date in the court's calendar.

On November 29, 2010, just prior to the court's summary judgment ruling, the plaintiffs filed a Motion To Exclude Expert Testimony And Strike Expert Report Of William C. Collins (docket no. 103). On December 8, 2010, in anticipation of the trial on her damages claim, plaintiff Rattray filed a Motion In Limine (docket no. 108), seeking to exclude various categories of evidence, and a Motion For Sanctions (docket no. 109), asking the court to enter an Order that an adverse inference jury instruction be included in the jury instructions in this case pertaining to the defendants' destruction of part of a video recording of her treatment on the day of her arrest. On December 13, 2010, plaintiff Rattray filed a Supplemental Motion In Limine (docket no. 113), seeking to exclude another category of evidence.

On December 10, 2010, the defendants filed a Resistance To Plaintiffs' Motion To Exclude Expert Testimony And Strike Expert Report Of William C. Collins (docket no. 110), asserting, *inter alia*, that the plaintiffs' motion is moot as to plaintiff Rattray. On December 22, 2010, the defendants filed a Response To Plaintiff's Motion In Limine And Plaintiff's Supplemental Motion In Limine (docket no. 114), objecting to the exclusion of only two of the eight categories of evidence put at issue. Also on December 22, 2010, the defendants filed a Resistance To Motion For Sanctions (docket no. 115), asserting, in essence, that there was no bad faith on their part in the destruction of part of the video recording of Rattray's treatment at the jail.

The court finds that the pending pretrial motions can be resolved without oral arguments. The court will resolve the plaintiffs' motions in turn.

4

## II. LEGAL ANALYSIS

### A. *The Motion To Exclude Evidence From The Defendants' Expert*

In their November 29, 2010, Motion To Exclude Expert Testimony And Strike Expert Report Of William C. Collins (docket no. 103), the plaintiffs assert that the opinions of the defendants' expert, William C. Collins, constitute inadmissible legal conclusions and will not assist the trier of fact and are unreliable and irrelevant.[2] In their Resistance (docket no. 110), the defendants argue, *inter alia*, that the plaintiffs' Motion To Exclude And Strike is moot as to plaintiff Rattray, because the court ruled that the only remaining issues as to her are damages issues. Thus, the defendants concede that Mr. Collins has no opinions relevant to Rattray's damages claim.

The court agrees with the defendants that the plaintiffs' motion to exclude evidence from Mr. Collins is moot as to plaintiff Rattray's remaining damages issues, because

---

[2]Mr. Collins, who has been designated as an expert in this case, has been in private practice since 1985. He focuses on providing legal advice, consulting, training, lecturing, and writing in the field of correctional law. As the court noted in its summary judgment ruling, Mr. Collins opines that an OWI arrest is a "predictor of drug possession," based on his review of jail records showing that, "between 2001 and 2006, there were at least 20 persons brought to the jail for OWI charges where a search found drugs," and "[i]n six of these searches, the drugs were hidden in places such as bras, underwear, or between a woman's legs (discovered as an officer observed the woman using the toilet)" so that "[t]hese drugs would not have been found during the property and pat searches the jail conducts short of a strip search." He also opined that strip searching OWI arrestees, in general, is reasonable. The court noted that Mr. Collins's Report fails to indicate how many OWI arrestees there were between 2001 and 2006, and that a "predictor" of possession of contraband does not necessarily give rise to the necessary individualized, reasonable suspicion that an arrestee possesses contraband. The court also noted that the defendants had not pointed to any evidence in the summary judgment record that any of the people responsible for strip searching plaintiff Rattray were aware of the information on which Mr. Collins relied, such that they could have drawn any inference about the likelihood that she possessed other concealed drugs from her arrest for an OWI offense.

5

Mr. Collins's opinions, even if otherwise admissible, are not relevant to any damages issues. Therefore, the court will deny the plaintiffs' motion as moot as it relates to the trial of plaintiff Rattray's claims. The court declines to consider, at this time, the plaintiffs' motion as it relates to the trial of the claims of the other two plaintiffs, which do involve liability issues. Rather, the court will address the remainder of the plaintiffs' motion nearer the time set for the trial of the other plaintiffs' claims.

### B. *The Motions In Limine*

In her December 8, 2010, Motion In Limine (docket no. 108), plaintiff Rattray seeks to exclude and to prevent references to any of the following categories of evidence: (1) any evidence of settlement demands or discussions; (2) any evidence that a motion in limine was filed; (3) any requests in the presence or hearing of the jury concerning stipulations as to facts or admissibility of evidence; (4) any evidence from persons not previously identified and fully disclosed; (5) any evidence of any prior arrest for, any involvement in, or any alleged involvement in criminal conduct; (6) any evidence of any medical procedures that she has undergone that are not related to the unlawful strip search; (7) any reference to the attempt to certify a class in this case or to the pending case of *Barkley v. Woodbury County, Iowa*, No. C 10-4106-MWB (N.D. Iowa). In her December 13, 2010, Supplemental Motion In Limine (docket no. 113), plaintiff Rattray seeks to exclude any evidence of or reference to contraband making its way into the Woodbury County Jail in the possession of persons arrested subsequent to October 15, 2007, when the defendants changed the strip search policy. In their Response (docket no. 114) to these motions in limine, the defendants object only to exclusion of categories (4) and (6) of the first motion in limine and offer no objection to the category of evidence identified in the

6

supplemental motion.[3] Therefore, the court will grant, as unopposed, the portions of Rattray's motion in limine and supplemental motion limine to which the defendants have made no objection. The court will consider in more detail, below, only the admissibility of the contested categories of evidence.

### 1. *Witnesses not properly disclosed*

The defendants object to that portion of Rattray's motion in limine seeking to exclude "[a]ny reference to or testimony from any persons to be called as a witness on the behalf of Defendants, including expert witnesses, if not previously identified and fully disclosed as required by the Federal Rules of Civil Procedure." Rattray asserts that, pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, the defendants are under a duty to disclose and supplement prior discovery responses regarding the identity of each person to be called as a witness at trial and that failure to make such disclosure permits the court to enter an order prohibiting introduction of nondisclosed witnesses. Rattray does not assert, however, that there is any indication that the defendants intend to present testimony of witnesses who have not been properly disclosed. The defendants assert that they have identified their witnesses and that the parties are in the process of preparing their proposed final pretrial order (FPTO). They argue that, if Rattray has an objection to a particular witness, she must identify that objection in her portion of the proposed order, and specify the testimony to which she objects.

The court finds that this portion of Rattray's motion in limine is redundant of the requirements of the Federal Rules of Civil Procedure and the Final Pretrial Order. The

---

[3]The defendants' lack of objection to several of these categories of evidence is really no surprise, as the inadmissibility of some of the evidence, such as evidence of settlement negotiations, is so obvious as to suggest that including those categories of evidence in the motion in limine is little more than an attempt to run up attorney fees.

court also finds that it is premature, in that there is no indication that there will be any witnesses that have not been properly disclosed. Thus, this portion of plaintiff Rattray's motion in limine will be denied as premature.

### 2. *Unrelated medical treatment*

The defendants also object to the portion of Rattray's motion in limine seeking to exclude "[a]ny reference to any medical procedures undergone by Plaintiff which are not related to the unlawful strip search of the Plaintiff." In her brief, Rattray states the following in support of this portion of her motion in limine:

> Counsel will discuss fully at the final pre-trial conference their concern regarding any reference to medical procedures undergone by the Plaintiff, which are not related to the wrongful strip search of the Plaintiff, as irrelevant and prejudicial. In this case, one such irrelevant procedure is very remote in time and also has the potential to be highly prejudicial. *See Nichols v. American National Insurance Co.*, 154 F.3d 875, 885 (8th Cir. 1998) (holding it was an abuse of discretion for the trial court to admit evidence.)

Rattray provides no further description of the kind of evidence at issue, nor does she attach any potential exhibits relating to it. The defendants argue that this portion of Rattray's motion in limine should be denied, to the extent that prior medical attention may be unrelated to Rattray's strip search, but nevertheless relevant to the potential cause or causes of the emotional distress from which she now claims to suffer.

Although it was, perhaps, appropriate for Rattray to alert the court to a possible evidentiary issue, her present motion in limine provides no basis for the court to resolve the question of the admissibility of any evidence of medical procedures unrelated to the strip search. For example, the court knows neither the nature nor the timing of the "medical procedures" at issue, let alone what emotional distress, if any, they may have

8

caused Rattray.  The failure to provide sufficient evidence for the court to determine the admissibility of challenged evidence pretrial is a chronic problem with motions in limine, in both civil and criminal cases.  The court cannot read attorneys' minds nor is the court privy to discovery materials in either civil or criminal cases, so the parties must provide the court with sufficient information for the court to rule on the admissibility of challenged evidence.  If an attorney believes that the information at issue in a motion in limine is sensitive, the attorney has the option to provide at least sufficient general description to provide the court with some idea of the evidence at issue, or better still, the attorney has the option to file the motion in limine and supporting information under seal.  Rattray's counsel did neither in this case, leaving the court unable to rule on this portion of her motion in limine without powers of mental telepathy.  Reserving the issue for full disclosure at the final pretrial conference, as Rattray did here, is problematic, because a magistrate judge presides over the final pretrial conference, but the undersigned, as the trial judge, rules on evidentiary matters.

Ruling on this portion of Rattray's motion in limine will be reserved until the court is more fully apprised of the evidence at issue.

### C.  *The Motion For Sanctions*

The last pretrial motion currently before the court is Rattray's December 8, 2010, Motion For Sanctions (docket no. 109).  In that motion, Rattray asks the court to enter an order to include in the jury instructions an adverse inference instruction pertaining to the defendants' destruction of part of a video recording of her treatment on the day of her arrest.

### 1. *Factual basis*

There is apparently no dispute that the Woodbury County Jail videorecorded Rattray's treatment after her arrest, from the time that she started the booking process until she was placed in a cell and officers left, at least at any time that she was directly in front of a camera to "trip" recording. Plaintiff's Motion For Sanctions (docket no. 109), Exhibit E (deposition testimony of Sheriff Parrett). Specifically, Charles Collison, a correctional officer with the Woodbury County Jail, testified at deposition that he had seen a video recording of Rattray while she was in the holding cell during her strip search and while she was being escorted back to a temporary cell. He testified that he turned off the recording when he observed that Rattray had been handcuffed and was being escorted by two officers and there were "no other further problems." *Id.*, Exhibit F (deposition testimony of Charles Collison). Such recordings not copied are automatically overwritten after approximately thirty days.

On September 14, 2006, Rattray filed in her criminal case in the Iowa District Court for Woodbury County a motion for an order for the Woodbury County Sheriff's Department to produce the video of Rattray's booking on or about August 19, 2006. The grounds for the motion were that the video recording was requested to verify whether Rattray demonstrated signs of intoxication at or about the time of her arrest. Plaintiff's Motion For Sanctions (docket no. 109), Exhibit B. The motion did not request preservation of the recording because litigation was anticipated. On September 15, 2006, the Iowa district court entered an Order To Preserve Video Recording ordering the Woodbury County Jail to "preserve any video recordings made of the defendant, MAUREEN B. RATTRAY, at the time she was booked into the jail in the early morning hours of August 19, 2006, with respect to the charge (OWI) pending in this case." *Id.*,

Exhibit C. The court also ordered, "Copies of this recording shall be provided to counsel for the defendant pursuant to the standard policies of the jail." *Id*.

Rattray contends that, at the time of her strip search, she refused to submit to the search, screamed "Rape!," and told the officers at the Woodbury County Jail that she intended to file a lawsuit against them. On October 24, 2006, Rattray's lawyer in the state criminal case wrote to Lieutenant Lynette Redden of the Woodbury County Sheriff's Department, complaining about Rattray's treatment and demanding answers. He did not, however, expressly threaten litigation or request any copy of the video recording of Rattray's treatment.

Despite the County's knowledge of the Iowa district court's order, and correspondence from Rattray's attorney protesting her treatment, the defendants destroyed a portion of the video recording of Rattray's treatment at the Woodbury County Jail. Rose Griffith, assistant to the chief and to the Woodbury County jail administrator, testified at deposition that she "burned" (copied) a recording from Rattray's "booking incident." *Id.*, Exhibit G. However, the recording that Griffith "burned" of Rattray's treatment terminated prior to Rattray being taken from the holding cell. Griffith explained that she copied recordings when ordered to produce them by judges, including "while [Rattray was] being booked in," but she "never do[es] it when she's walking in, when she's going to the temporary cells," because "[i]t's always been just the booking procedure." She also testified that the policy regarding retention of copies of video recordings has now changed, although she did not know precisely when, and that she is now directed to copy the entire recording, from the time that an arrestee walks into the jail until the arrestee is placed in a temporary cell, if the County receives an order to preserve a recording.

11

## 2. *Arguments of the parties*

Rattray argues that destroying evidence that will be relevant to anticipated or pending litigation is "improper conduct" that warrants sanctions. She contends that the defendants were on notice of imminent litigation from her protests at the time of her strip search and her attorney's letter to Lieutenant Redden. She also points out that the Iowa district court expressly ordered the defendants to preserve "any video recordings" of Rattray. She also contends that she is prejudiced by the destruction of a portion of the video, because it would have been relevant to the treatment that she received and the physical and emotional impact of that treatment. She also argues that the destroyed portion of the video recording was the only video recording of the events, so that there is no better evidence of those events. Finally, she contends that the destruction of a portion of the video recording was in bad faith, because the defendants were on notice of the need to preserve the recording, and were specifically directed to preserve it, and no policy mandated destruction of the entire recording, but the defendants nevertheless take the position that they were only required to preserve the recording of the "booking procedures," not Rattray's treatment while being moved to a temporary cell. She contend that the appropriate sanction for this conduct is an adverse inference instruction.[4]

---

[4]Rattray has proffered the following adverse inference instruction:
> You may, but are not required to, assume that the contents of the video recording of Maureen Rattray being led from the room where the strip search and visual body cavity inspection commenced, while completely nude, to another room where the search was completed, would have been adverse, or detrimental, to the Defendants if preserved.

Plaintiff's Preliminary Proposed Non-Uniform Jury Instructions (docket no. 107).

The defendants assert that Rattray has not offered any evidence to substantiate her claim that the missing portion of the video recording depicts "outrageous treatment" or the "physical and emotional impact" of her treatment. The defendants also argue that none of the witnesses who were deposed confirm Rattray's contentions. Thus, the defendants contend that Rattray has not shown that she has been prejudiced by what she characterizes as destruction of evidence. The defendants also dispute Rattray's contention that they knew or should have known that the segment of the recording that was not preserved constituted relevant evidence that should have been preserved for a subsequent civil case. They also argue that they preserved Rattray's booking recording in the same fashion that they had preserved such recordings for years. They contend that there is no evidence that anyone has ever challenged their practice of preserving only those activities conducted during the actual booking process. They argue that, even supposing that Rattray's attorney's letter dated October 2006 threatened imminent civil litigation, by the time that letter was written, the recording would have been routinely overwritten. They contend that Griffith copied the recording of the booking as required by the Iowa district court's September 15, 2006, order. Thus, the defendants argue that there is no basis to impose the requested sanction of an adverse inference instruction.

### 3. *Analysis*

The Eighth Circuit Court of Appeals has made clear that a sanction for destruction of evidence, such as an adverse inference instruction, requires a finding of intentional destruction indicating a desire to suppress the truth, *i.e.*, bad faith. *Menz v. New Holland North Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004), and *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)). As the Eighth Circuit Court of Appeals has explained,

13

An adverse inference instruction is a powerful tool in a jury trial.  When giving such an instruction, a federal judge brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury.  It necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of an erased audiotape.  As the district court in this case put it colloquially, "it's like cow crap; the more you step in it, the more it stinks."  One distinguished court years ago cautioned against use of an adverse inference instruction like the one given in this case (there, involving an absent witness rather than missing evidence), because "[t]he jury should not be encouraged to base its verdict on what it speculates the absent witness would have testified to, in the absence of some direct evidence." *Felice v. Long Island R.R. Co.*, 426 F.2d 192, 195 n. 2 (2nd Cir. 1970) (Friendly, J.).

Presumably cognizant of these factors, our court in *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739 (8th Cir. 2004), recently clarified what circumstances justify the sanction of an adverse inference instruction.  *Stevenson* specifically addressed the pre-litigation destruction of documents pursuant to Union Pacific's document retention policy.  While acknowledging that *dicta* in *Lewy [v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988),] had articulated a "knew or should have known" negligence standard for imposition of the sanction, we ultimately rejected that approach, and held that "there must be a finding of intentional destruction indicating a desire to suppress the truth" before an adverse inference instruction is justified.  *Id.* at 746. Though observing that the case before it "test[ed] the limits of what we are able to uphold as a bad faith determination," the *Stevenson* court held that the district court did not abuse its discretion in finding that Union Pacific acted with the requisite intent to destroy evidence for the purpose of suppressing evidence.  *Id.* at 747-48.

14

*Morris*, 373 F.3d 896, 900-01 (8th Cir. 2004).

> More specifically still, the Eighth Circuit Court of Appeals has explained,
>
>> We have never approved of giving an adverse inference instruction on the basis of prelitigation destruction of evidence through a routine document retention policy on the basis of negligence alone. Where a routine document retention policy has been followed in this context, we now clarify that there must be some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth in order to impose the sanction of an adverse inference instruction.

*Stevenson*, 354 F.3d 739, 747 (8th Cir. 2004). The court also explained, "There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." *Id.* at 748 (citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993)). Furthermore, the "prejudice" requirement "is satisfied by the nature of the evidence destroyed in the case." *Id.* Such prejudice may arise, not just from an indication that the destroyed recording could be classified "as a smoking-gun," but from "the very fact that it is the only recording of" the incident in question. *Id.* Finally, the adverse inference must be subject to reasonable rebuttal testimony. *Id.* at 750. As the court explained in *Stevenson*, the defendant must be permitted "to put on some evidence of its document retention policy and how it affected the destruction of the requested records as an innocent explanation for its conduct." *Id.* "Absent this opportunity, the jury is deprived of sufficient information on which to base a rational decision of whether to apply the adverse inference, and an otherwise permissive inference easily becomes an irrebuttable presumption." *Id.*

The Eighth Circuit Court of Appeals has not made entirely clear whether the court must make the preliminary finding of bad faith destruction of evidence, before the fact finder may be given an adverse inference instruction, or whether the fact finder should

make any finding concerning bad faith, as a prerequisite to any finding based on an adverse inference. The undersigned concludes that the question of whether or not the party who allegedly destroyed evidence acted in bad faith may be submitted to the jury along with the question of whether or not to draw an adverse inference from the destruction of evidence. What the court must certainly do, as the gatekeeper for relevant evidence and the provider of appropriate Jury Instructions, is determine that there is sufficient evidence in the record from which a reasonable juror could find that the allegedly missing evidence once existed and was in the control of the party that allegedly destroyed it, that the party that allegedly destroyed the evidence acted with the requisite bad faith, and that the destruction of the evidence prejudiced the opposing party. *See, e.g., Stevenson*, 354 F.3d at 747-48.

These requirements are met here. Officer Collison avers, and Officer Griffith's testimony strongly suggests, that the recording of Rattray's treatment at the jail extended beyond the extant portions of the recording, which relate only to her booking. That recording was, at all times, in the control of the County.

Here, there is also sufficient basis for an inference of bad faith destruction of a portion of the recording to submit the question to the jury. In *Stevenson*, the Eighth Circuit Court of Appeals found sufficient basis for an inference of bad faith, as follows:

> The district court's bad faith determination is supported by Union Pacific's act of destroying the voice tape pursuant to its routine policy in circumstances where Union Pacific had general knowledge that such tapes would be important to any litigation over an accident that resulted in serious injury or death, and its knowledge that litigation is frequent when there has been an accident involving death or serious injury. *While these are quite general considerations, an important factor here is that a voice tape that is the only contemporaneous recording of conversations at the time of the accident will*

16

> *always be highly relevant to potential litigation over the accident. We conclude that this weighs heavier in this case than the lack of actual knowledge that litigation was imminent at the time of the destruction.* Additionally, the record indicates that Union Pacific made an immediate effort to preserve other types of evidence but not the voice tape, and the district court noted that Union Pacific was careful to preserve a voice tape in other cases where the tape proved to be beneficial to Union Pacific. The prelitigation destruction of the voice tape in this combination of circumstances, though done pursuant to a routine retention policy, creates a sufficiently strong inference of an intent to destroy it for the purpose of suppressing evidence of the facts surrounding the operation of the train at the time of the accident.

*Stevenson*, 354 F.3d at 748 (emphasis added).

Similarly, here, the court finds that the defendants had *at least* general knowledge that the video recording of Rattray's treatment would be important to any subsequent litigation and might even be important to the litigation of the criminal charges against her. The Iowa district court order was not limited in any way as to the specific subject matter of the recording that the defendants were ordered to retain. Rather, the Iowa district court ordered the Woodbury County Jail to "preserve *any video recordings* made of the defendant, MAUREEN B. RATTRAY, at the time she was booked into the jail in the early morning hours of August 19, 2006, with respect to the charge (OWI) pending in this case." (Emphasis added). Jurors are entitled to consider whether "at the time [Rattray] was booked" could reasonably be construed to limit the recording to the booking procedures or whether it simply identified the date of the recordings that the defendants were required to preserve. While the court believes that Rattray has "oversold" an inference of her intent to pursue civil litigation from her attorney's letter complaining of her treatment, a reasonable juror could conclude from the order of the Iowa district court

17

and Rattray's protests at the time of her strip search that the recording would be important to a criminal or civil case. Moreover, as in *Stevenson*, an important factor here is that the missing video recording is the only contemporaneous recording of what occurred not just during Rattray's strip search, but after it, and such evidence is highly relevant to potential litigation over Rattray's condition and her treatment, which weighs heavier in this case than the lack of actual knowledge that litigation was imminent at the time of the destruction. *Id*. The prelitigation destruction of the concluding portion of the video recording in this combination of circumstances, though purportedly done pursuant to a routine retention policy, creates a sufficiently strong inference of an intent to destroy it for the purpose of suppressing evidence of the facts surrounding Rattray's treatment at the Woodbury County Jail to warrant an adverse inference instruction. *Id*.

There is also sufficient evidence that the "prejudice" requirement is satisfied here "by the nature of the evidence destroyed in the case." *Id*. Again, even if the missing portion of the recording cannot be shown to be "a smoking-gun," "the very fact that it is the only recording of" the incident in question is sufficient to show prejudice. *Id*.

Thus, the court finds that it is appropriate to submit to the jury the question of whether the defendants acted in bad faith in destroying the portion of the recording in question, as well as whether or not to draw the permissive adverse inference.

What is plainly missing from Rattray's proffered adverse inference instruction is any recognition that the adverse inference must be subject to reasonable rebuttal testimony. *Id*. at 750. Not only must the defendants be allowed "to put on some evidence of [their] document retention policy and how it affected the destruction of the requested records as an innocent explanation for its conduct," *see id.*, but the jury must be instructed to consider these matters. *Id*. "Absent this opportunity, the jury is deprived of sufficient

18

information on which to base a rational decision of whether to apply the adverse inference, and an otherwise permissive inference easily becomes an irrebuttable presumption." *Id.*

Therefore, while the court will include an adverse inference instruction in the Jury Instructions in Rattray's case, the court will give an instruction that takes into account the defendants' opportunity to rebut the adverse inference, which Rattray's proposed instruction does not.[5]

### III. CONCLUSION

Upon the foregoing,

---

[5]The court concludes that the following instruction more nearly comports with the requirements of *Stevenson* than the adverse inference instruction proposed by Rattray:

> [The plaintiff] contends that [the defendants] destroyed or failed to preserve [a portion of the video recording of Rattray's treatment at the Woodbury County Jail after her arrest]. If you find that the evidence was within the [defendants'] control, that the [defendants] could have produced the evidence, that the evidence would have been of some significance in deciding any of the facts in dispute in this case, and that the [defendants] acted with the intent to destroy it for the purpose of suppressing evidence of the facts surrounding Rattray's treatment at the Woodbury County Jail, then you are permitted, but not required, to infer that the evidence would have been unfavorable to the [defendants]. In deciding whether to draw this inference, however, you should consider whether the [defendants] had a reason for not producing this evidence that was explained to your satisfaction. Any inference that you decide to draw should be based on all of the facts and circumstances in this case.

The court will give an adverse inference instruction that is similar in content to this one.

1. The plaintiffs' November 29, 2010, Motion To Exclude Expert Testimony And Strike Expert Report Of William C. Collins (docket no. 103) is **denied as moot** as to plaintiff Rattray's damages trial, but ruling is **reserved** on the motion as to the separate trial of the other plaintiffs' claims;

2. Plaintiff Rattray's December 8, 2010, Motion In Limine (docket no. 108) is **granted** as unopposed, with the following exceptions:

   a. The portion of the motion seeking to exclude witnesses not properly disclosed is **denied as premature**; and

   b. Ruling on the portion of the motion seeking to exclude evidence of or reference to any medical procedures that Rattray has undergone that are not related to the strip search is **reserved** until the court is more fully apprised of the evidence at issue;

3. Plaintiff Rattray's December 13, 2010, Supplemental Motion In Limine (docket no. 113) is **granted** as unopposed;

4. Rattray's December 8, 2010, Motion For Sanctions (docket no. 109) is **granted** to the extent that the court will give an adverse inference instruction regarding destruction of a portion of a video recording, similar to the one set out, above, in note 4.

**IT IS SO ORDERED.**

**DATED** this 27th day of December, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA