**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| MAUREEN RATTRAY, LISA LAMBERT, and LORI MATHES, <br><br> Plaintiffs, <br><br> vs. <br><br> WOODBURY COUNTY, IOWA, <br><br> Defendant. | No. C 07-4014-MWB <br> (No. C 08-4008-MWB) <br> (No. C 08-4032-MWB) <br><br> **MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF LAMBERT'S MOTION TO RECONSIDER SUMMARY JUDGMENT ON HER "MANNER" STRIP-SEARCH CLAIM** |

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION ............................................................................. 2*
    *A.   Background ............................................................................. 2*
    *B.   Arguments Of The Parties ......................................................... 2*

*II.  ANALYSIS ...................................................................................... 5*
    *A.   Reconsideration Pursuant To Rule 52(b) ..................................... 5*
    *B.   Reconsideration Pursuant To Rule 59(e) ..................................... 6*
        *1.   Applicable standards ......................................................... 6*
        *2.   Newly discovered evidence ................................................ 7*
        *3.   Manifest error ................................................................. 8*
            *a.   Application of an erroneous standard to the "manner" claim ........................................................... 8*
            *b.   Erroneous finding of inconsistent statements .............. 11*

*III. CONCLUSION ............................................................................. 13*

## I.   INTRODUCTION

### A.   Background

This case is before me on plaintiff Lambert's January 2, 2013, Rule 52(b) And/Or 59(e) Motion (Motion) (docket no. 187).  In her Motion, Lambert seeks reconsideration of my December 10, 2012, Memorandum Opinion And Order Regarding Defendant's Motions For Reconsideration And For Summary Judgment (Ruling) (docket no. 186), *published at Rattray v. Woodbury Cnty., Iowa*, ___ F. Supp. 2d ___, 2012 WL 6114994 (N.D. Iowa Dec. 10, 2012), to the extent that the Ruling granted summary judgment in favor of the defendant County on Lambert's "manner" strip-search claim.  The County filed a Resistance (docket no. 188) to Lambert's Motion on January 14, 2013, and Lambert filed a Reply (docket no. 189) in further support of her Motion on January 15, 2013.  I find that oral arguments on the Motion are not necessary, in light of the parties' briefing, nor has my crowded schedule permitted the timely scheduling of oral arguments.  Therefore, I will consider Lambert's Motion on the written submissions.

### B.   Arguments Of The Parties

In her Motion, proper, Lambert asserts that "[t]he court reached its conclusion on the basis of *a finding* that Lambert's deposition testimony and her affidavit were inconsistent with respect to facts pertinent to the manner of her strip search," Motion (docket no. 187) at ¶ 3 (emphasis added), but that there is, in fact, no inconsistency between her deposition testimony and her affidavit.  She also asserts that the "manner" of her strip search, in a room with windows in the doors permitting her to be observed during the strip search by persons not conducting the search, who might pass by, violated her Fourth Amendment rights.  *Id*. at ¶¶ 4-5.

In her supporting Brief, however, Lambert states that "[t]he trial court relied on *two findings* of fact to conclude that [her] 'manner' claim could not survive summary judgment." Lambert's Brief (docket no. 187-1) at 2 (emphasis added). Lambert identifies the first finding to be that she failed to allege "'that there were actually "people outside the room in the booking area who could see into the room" where she was strip searched,'" but she expressly *agrees* that she could not legitimately claim otherwise. *Id.* (quoting the Ruling at 43, *Rattray*, ___ F.3d at ___, 2012 WL 6114994 at *24). She does take issue with the second finding on which I purportedly relied, that her affidavit "was inconsistent with her prior deposition testimony." *Id.*; *see* Ruling at 43 n.7, *Rattray*, ___ F.3d at ___ at n.7, 2012 WL 6114994 at *24 n.7 ("Lambert's affidavit is also faulty, because her statement in her affidavit 'that people outside of the room in the booking area could see into the room' is contrary to her deposition testimony."). Lambert then argues that there was no inconsistency, essentially because, in her affidavit, she was referring to the windows in the door to the room where she was strip searched, but in her deposition, she was referring to the windows above the booking counter and truthfully testified that it was not clear to her that a sheriff's deputy standing behind the booking counter could look through the window above the booking counter and see into the room where she was strip searched. She contends, however, that anyone standing on the other side of the booking counter, in the room adjacent to the room in which she was strip searched, could peer into that room. She contends that a strip search conducted in a place where others could observe the search violated the Fourth Amendment.

In its Resistance, the County contends that the basis for my grant of summary judgment on Lambert's claim was that Lambert had failed to generate genuine issues of material fact that she was subjected to a strip search conducted in an unreasonable "manner," where Lambert neither pleaded nor pointed to evidence from which a

3

reasonable juror could find that she was injured by the "manner" of her search.  The County notes that Lambert had never alleged that there was anyone outside of the room where she was strip searched who could see into that room.  The County also contends that Lambert's affidavit is quite different from her deposition, where her deposition made clear that *she did not know if anyone could see into the room where she was strip searched*, but her affidavit avers that "[t]he door to the room in which [she] was searched had windows in it such that people outside of the room in the booking area could see into the room."  The County also contends that I correctly noted that Lambert was attempting to create a "manner" claim, where she had previously failed to assert such a claim.  Finally, the County asserts, as a factual matter, that it conducted the strip search in a manner that provided privacy, which is distinguishable from the cases on which Lambert now relies.  The County argues that the mere presence of windows in the room where Lambert was strip searched does not make the "manner" of the search unconstitutional.

In reply, Lambert contends that the County has conceded that Lambert was referring to windows over the booking counter in her deposition, but was referring to windows in the door of the room where she was strip searched in her affidavit, but she cites no basis for this supposed concession.  She also disputes the County's factual contention that it conducted the strip search in a manner that provided privacy, because she argues that exhibits from Rattray's first "damages" trial show that any person standing in the booking area who was tall enough to see over the shoulder of a female deputy standing with her back to the windows in the door to the strip-search room could observe the search.

## II.   ANALYSIS

### A.   *Reconsideration Pursuant To Rule 52(b)*

Rule 52(b) of the Federal Rules of Civil Procedure, one asserted basis for Lambert's Motion, provides as follows:

> **(b) Amended or Additional Findings.** On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

FED. R. CIV. P. 52(b). On its face, this rule states no standards for granting the relief it authorizes. However, the Eighth Circuit Court of Appeals has explained that "[m]otions to amend a judgment [pursuant to Rule 52(b)] cannot be used to raise arguments which could have been raised prior to the issuance of judgment." *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (9th Cir. 1996) (citing *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994)). Thus, where a party had ample opportunity to raise, argue, and present evidence on the issue on which it seeks reconsideration prior to disposition of the issue by the court, but did not do so, Rule 52(b) provides no relief. *Id.*

To the extent that Lambert seeks relief under this rule, her attempt to obtain such relief fails, because she could have raised arguments and presented evidence to demonstrate that there was no inconsistency between her affidavit and her deposition prior to my Ruling. *Id.* Indeed, I noted in the footnote in which I pointed out the inconsistency between her affidavit and her deposition that she had made "no attempt to explain the difference." *See* Ruling at 43 n.7, *Rattray*, ___ F. Supp. 2d at ___ n.7,

2012 WL 6114994 at *24 n.7. Therefore, if Lambert is entitled to any relief, it must be pursuant to Rule 59(e), the other asserted basis for her Motion.

### B.  *Reconsideration Pursuant To Rule 59(e)*

#### 1.  *Applicable standards*

Rule 59(e) of the Federal Rules of Civil Procedure provides, as follows:

> **(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

FED. R. CIV. P. 59(e). On its face, this rule also states no standards for the relief that it authorizes. However, the Eighth Circuit Court of Appeals has explained that "Rule 59(e) authorizes a district court to alter or amend a judgment based on newly discovered evidence," *Briscoe v. County of St. Louis, Mo.*, 690 F.3d 1004, 1015 (8th Cir. 2012), and also serves "'the limited function of correcting manifest errors of law or fact.'" *United States ex rel. Raynor v. National Rural Utils. Co-op. Fin. Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) (*Raynor*) (quoting *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)); *Wells Fargo Bank, N.A. v. WMR e-PIN, L.L.C.*, 653 F.3d 702, 714 (8th Cir. 2011).

Relief pursuant to Rule 59(e) is subject to the district court's broad discretion. *Id*. The Eighth Circuit Court of Appeals has explained that, in the context of a Rule 59(e) motion, "'An abuse of discretion occurs where the district court fails to consider an important factor, gives significant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors.'" *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 863 (8th Cir. 2011) (quoting *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010), with internal quotation marks omitted). However, like a Rule 52(b) motion, a Rule 59(e) motion cannot serve as a vehicle for

new legal theories or arguments "which could have been offered or raised prior to the entry of judgment." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934 (8th Cir. 2006).

I conclude that Lambert cannot meet the applicable standards for relief pursuant to Rule 59(e), either.

### 2. *Newly discovered evidence*

First, to the extent that Lambert appears to rely on "newly discovered evidence" for Rule 59(e) relief—that is, exhibits from Rattray's first "damages" trial that purportedly demonstrate that someone in the booking area could see into the room where she was strip searched through the windows in the door, if that person was tall enough to see over the shoulders of a deputy standing in front of the door—she is not entitled to relief on that contention. *See Briscoe*, 690 F.3d at 1015 (recognizing that Rule 59(e) provides relief based on "newly discovered evidence"). As the Eighth Circuit Court of Appeals has recognized,

> To succeed on a Rule 59(e) motion [based on newly discovered evidence], the movant must show (1) the evidence was discovered after the summary judgment hearing; (2) the movant exercised due diligence to discover the evidence before the end of the summary judgment hearing; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new hearing considering the evidence would probably produce a different result.

*Callanan v. Runyun*, 75 F.3d 1293, 1297 (8th Cir. 1996) (alterations and internal quotation marks omitted); *accord Briscoe*, 690 F.3d at 1015-16 (quoting *Callanan*, 75 F.3d at 1297); *Williams v. Hobbs*, 658 F.3d 842, 854 (8th Cir. 2011). Here, however, the exhibits from Rattray's first "damages" trial on which Lambert relies were not discovered only after my Ruling, but were part of the record well before that Ruling; Lambert did not exercise due diligence in discovering the evidence before the end of the

period during which I considered the County's Motion For Partial Summary Judgment, because that evidence should have been known to counsel since Rattray's first "damages" trial; and the evidence would have made no difference in my Ruling, because it does not address the fatal flaw in Lambert's resistance to summary judgment against her on her "manner" strip-search claim, which was her failure to allege that there was actually anyone in the adjacent room who could have seen into the room where she was strip searched. *Id*.

### 3. *Manifest error*

To the extent that Lambert contends that she is entitled to relief on the basis of "manifest" legal or factual error, *see Raynor*, 690 F.3d at 958 (recognizing that Rule 59(e) permits relief based on "manifest errors of law or fact"), this contention also fails. Her assertion of "manifest" error fails, as to both her argument that I applied an erroneous legal standard to her "manner" claim and her argument that I erroneously concluded that her affidavit was inconsistent with her prior deposition testimony.

#### a. *Application of an erroneous standard to the "manner" claim*

Contrary to Lambert's characterizations, the *only* ground on which I relied to grant summary judgment against her on her "manner" strip-search claim was the following:

> In her affidavit, . . . [Lambert] fails to allege that there were actually 'people outside of the room in the booking area [who] could see into the room' where she was strip searched from the adjacent room. Thus, Lambert has failed to generate genuine issues of material fact that she was subjected to a strip search conducted in an unreasonable "manner," where she neither adequately pleaded nor pointed to evidence from which a rational juror could find that she was injured by the "manner" of her strip search.

Ruling at 43-45 (footnote omitted); *Rattray*, ___ F. Supp. 2d at ___, 2012 WL 6114994 at *24 (footnote omitted). Lambert now expressly *agrees* that she "cannot legitimately claim 'that there were actually "people outside the room in the booking area who could see into the room" where she was strip searched.'" Lambert's Brief at 2. I pointed out other failings—such as Lambert's previous failures to assert a "manner" claim and the inconsistency between her affidavit and her deposition—only in a footnote. *See* Ruling at 43 n.7, *Rattray*, ___ F. Supp. 2d at ___ n.7, 2012 WL 6114994 at *24 n.7. Thus, it is clear that, even if there is no inconsistency between Lambert's affidavit and her deposition testimony, as Lambert now contends, that fact would not change the outcome of the Ruling, so that Lambert is fixating on a factor that ultimately was not relevant to the disposition of her "manner" claim. *Matthew*, 639 F.3d at 863 (relief pursuant to Rule 59(e) is appropriate, if, *inter alia*, the court fails to consider an important factor, or the court gives significant weight to an irrelevant or improper factor).

Also, to the extent that Lambert contends that a Fourth Amendment violation occurred, even if people were not actually in the adjacent room who could see into the room where she was strip searched, because there was a possibility that there *could have been* such people, she failed to raise that argument before my Ruling. Thus, she is not entitled to Rule 59(e) on the basis of a belated argument that she could have raised before. *See Metro. St. Louis Sewer Dist.*, 440 F.3d at 934 (explaining that a Rule 59(e) motion cannot serve as a vehicle for new legal theories or arguments "which could have been offered or raised prior to the entry of judgment").

Just as importantly, rejection of this argument, if it had been made, would not be "manifest" legal error. *Raynor*, 690 F.3d at 958. The recognition by the Supreme Court that "the place in which [the search] is conducted" is relevant to the constitutionality of "the particular intrusion," in both *Bell v. Wolfish*, 441 U.S. 520,

9

559 (1979), and *Florence v. Board of Chosen Freeholders of the County of Burlington*, ___ U.S. ___, 132 S. Ct. 1510, 1526 (2012) (Alito, J., concurring), simply does not mean that a strip search in a room with a door with windows in it adjacent to an empty room constitutes a Fourth Amendment violation.  This is so, because, in such circumstances, there has been no "intrusion" on the privacy of the search by non-participants as a result of the "place in which [the search] was conducted." *See Bell*, 441 U.S. at 559; *Florence*, ___ U.S. at ___, 132 S. Ct. at 1526 (Alito, J. concurring).

The decisions on which Lambert relies for the proposition that a constitutional violation occurs if there is merely a possibility that non-participants might observe the strip search actually hold that there was a constitutional violation, because the "place in which [the strip search] was conducted" in each of those cases afforded no privacy from prying eyes of non-participants *actually present*. *See Iskander v. Village of Forest Park*, 690 F.2d 126, 129 (7th Cir. 1982) (holding that a triable "manner" claim against the municipality existed where "not only did plaintiff testify *that an unknown individual peered through a window at her when she was disrobed during the strip search*, but further, plaintiff presented evidence showing that the Forest Park police department customarily conducted strip searches in a room with a window facing a corridor *through which numerous individuals might be passing at any given time*" (emphasis added));[1] *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir. 1981) (holding that "no

---

[1] Although the second italicized phrase in *Iskander* might seem to suggest that the mere possibility that a non-participant might be able to see into the room where the strip search was conducted constitutes a constitutional violation, the question in *Iskander* was whether a municipal *policy* was a proximate cause of the deprivation of the plaintiff's rights.  *See* 690 F.2d at 129.  The *policy* was clearly a proximate cause of the violation—that is, a non-participant actually observing the search—where the place customarily used for the strip search did not reasonably afford privacy.  *Id.*  Moreover, here, Lambert failed to show, or to generate a jury question, that the room—not

10

police officer in this day and time could reasonably believe that conducting a strip search in an area exposed to the general view *of persons known to be in the vicinity* whether or not any actually viewed the search is a constitutionally valid governmental invasion of [the] personal rights that [such a search entails"); *Timberlake by Timberlake v. Benton*, 786 F. Supp. 676, 690 (M.D. Tenn. 1992) (holding that a strip search "in a car alongside the highway," with the car door facing the highway open during the search and both the car's dome light and an officer's flashlight on, such that "male individuals on the scene, as well as passing motorists, could see into the car," was not constitutional); *Foster v. City of Oakland*, 621 F. Supp. 2d 779, 793 (N.D. Cal. 2008) (holding that "field strip searches" were inconsistent with the principles that strip searches must be "conducted in a private area, where it cannot be observed by persons not participating in the search," because such strip searches were conducted "in public"). Thus, while these decisions may hold that non-participants do not actually have to see the strip search for a constitutional violation to occur, each decision involved the *actual presence* of non-participants who *could have seen* the strip searches.

In short, I did not commit any "manifest" error of law in my Ruling granting summary judgment in favor of the County on Lambert's "manner" strip-search claim. *Raynor*, 690 F.3d at 958 (recognizing that Rule 59(e) relief may be based on a "manifest error of law or fact").

### b. *Erroneous finding of inconsistent statements*

Finally, I find no "manifest" error, *id.*, in my conclusions that Lambert's affidavit is inconsistent with her deposition testimony and that Lambert failed to explain that inconsistency—recognizing that these conclusions would have been an adequate, independent reason to grant summary judgment in the County's favor on Lambert's

---

corridor—adjacent to the room in which she was strip searched was actually occupied or that numerous people might be passing through it at the time of her strip search.

"manner" strip-search claim, even if I did not rely on those conclusions in the first instance. *Lykken v. Brady*, 622 F.3d 925, 933 (8th Cir. 2010) ("In *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983), this court held where a party creates an issue of fact by filing an affidavit contradicting earlier testimony in order to avoid summary judgment, the party raises a 'sham issue of fact instead of a genuine one.'"). Lambert belatedly attempts to explain away the inconsistency by asserting that, in her affidavit, she was referring to windows located in the door to the room where she was strip searched, but in her deposition, she was referring to the windows above the booking counter and truthfully testified that it was not clear to her that a sheriff's deputy standing behind the booking counter could look through the window above the booking counter and see into the room where she was strip searched. This assertion is untenable in light of Lambert's actual averments and deposition testimony.

Specifically, in her deposition, Lambert testified, "There was people in the— behind the windows, the booking windows," but when she was asked, "You don't know if they could see [into the room where you were strip searched]?", she testified, "I don't know," and admitted that no one told her that they saw her. County's Appendix In Support Of Its Motion For Summary Judgment (docket no. 177-8), 27 (Lambert's Deposition at 35:15-20). The cited portion of her deposition testimony also includes the question, "Do you know if there was anyone outside on the other side of the door?" and Lambert's answer, "No." *Id.* (Lambert's Deposition at 35:15-17). Thus, Lambert's deposition testimony made clear that she did not know if anyone, either in the booking area or behind the booking counter windows, could see into the room where she was strip searched through the windows in the door to the room where she was strip searched. In her affidavit, in contrast, Lambert suddenly asserts knowledge that someone could see into the room where she was strip searched, by

12

averring, "The door to the room in which I was searched had windows in it *such that people outside of the room in the booking area could see into the room*." Affidavit of Lisa Lambert (docket no. 182-5), ¶ 4 (emphasis added). Thus, there is an unexplained inconsistency between the deposition testimony and the later affidavit as to whether Lambert knew if anyone could see into the room where she was strip searched.

Even if I could read the deposition testimony to state only Lambert's lack of knowledge about the actual presence of people in the booking area, and Lambert's affidavit to aver only that, if there had been people actually in the booking area, they could have seen into the room where she was strip searched, such that the two statements are not technically inconsistent, the statement in the affidavit does not generate a genuine issue of material fact on Lambert's "manner" claim. For the reasons stated above, the mere possibility that non-participants could observe the strip search does not establish a constitutional violation if no non-participant, who could have observed the strip search, was actually present.

Lambert is not entitled to Rule 59(e) relief on the basis of this argument, either.

### III.   CONCLUSION

I find no basis under either Rule 52(b) or Rule 59(e) to alter or amend my findings or conclusions leading to my holding that the County is entitled to summary judgment on Lambert's "manner" strip-search claim.

THEREFORE, plaintiff Lambert's January 2, 2013, Rule 52(b) And/Or 59(e) Motion (docket no. 187) is **denied** in its entirety.

**IT IS SO ORDERED**.

**DATED** this 30th day of January, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA